1  LATHAM & WATKINS LLP
        Daniel M. Wall (Bar No. 102580)
2           dan.wall@lw.com
        Timothy L. O'Mara (Bar No. 212731)
3           tim.o'mara@lw.com
        Andrew Gass (Bar No. 259694)
4           andrew.gass@lw.com
    505 Montgomery Street, Suite 2000
5   San Francisco, California  94111-6538
    Telephone:  +1.415.391.0600
6   Facsimile:  +1.415.395.8095

7   *Attorneys for Defendants Ticketmaster L.L.C.,*
    *Live Nation Entertainment, Inc., and Live*
8   *Nation Worldwide, Inc.*

9

10

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13

14   MATTHEW AJZENMAN; SUSAN          Case No. 2:20-cv-03643-DSF-JEM
     TERRY-BAZER; BENNY WONG;
15   ALEX CANELA; JEREMY WOOLLEY;
     AMANDA WOOLLEY; ANNE           **DEFENDANTS TICKETMASTER**
16   BERGER; CATHEY MATTINGLY;      **L.L.C., LIVE NATION**
     BLAKE WOLLAM; and KRYSTAL      **ENTERTAINMENT, INC. & LIVE**
17   MOYER, on behalf of themselves, and all   **NATION WORLDWIDE, INC.'S**
     others who are similarly situated,        **MEMORANDUM OF POINTS AND**
18                                             **AUTHORITIES IN SUPPORT IN**
                        Plaintiffs,            **SUPPORT OF MOTION TO**
19                                             **DISMISS PLAINTIFFS'**
                                               **CORRECTED AMENDED CLASS**
20   v.                                        **ACTION COMPLAINT**

21   OFFICE OF THE COMMISSIONER OF
     BASEBALL, an unincorporated         Date:      September 14, 2020
22   association doing business as MAJOR  Time:      1:30 p.m.
     LEAGUE BASEBALL, et al.,            Place:     Courtroom 7D
23                                        Judge:     Honorable Dale S. Fischer
                        Defendants.
24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3  INTRODUCTION ............................................................................. 1

4  I.    PLAINTIFFS FAIL TO STATE A CLAIM DIRECTLY
5        AGAINST LN/TM BECAUSE THEY DID NOT PURCHASE
       TICKETS THROUGH LN/TM AND DO NOT ALLEGE
6        THEY RELIED ON ANY FRAUDULENT OR MISLEADING
       CONDUCT ................................................................................... 7

7        A.    Non-Purchasing Plaintiffs' Claims Should Be Dismissed
8              Because They Did Not Purchase Goods or Services From
              LN/TM ......................................................................... 7

9        B.    All Plaintiffs' Claims Should Be Dismissed Because
              They Do Not Adequately Allege Any Misleading
10             Conduct or Statements by LN/TM Under Rule 9(b)'s
11             Heightened Pleading Standard.............................................. 8

12  II.   PLAINTIFFS DO NOT (AND CANNOT) STATE CLAIMS
       AGAINST LIVE NATION ENTERTAINMENT OR LIVE
13       NATION WORLDWIDE ON THE BASIS OF
       *TICKETMASTER'S* ALLEGED CONDUCT ................................ 11

14  III.  PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO
15       ESTABLISH SECONDARY "CONSPIRACY" LIABILITY ................... 12

16  IV.   PLAINTIFFS' "UNJUST ENRICHMENT" AND CLRA
       CLAIMS FAIL FOR OTHER, INDEPENDENT REASONS ................... 14

17        A.    Plaintiffs' "Unjust Enrichment" Claim Is Not Cognizable
18             and Is Duplicative ........................................................... 14

19        B.    Plaintiffs' CLRA Claim Fails Because Tickets to MLB
              Games Are Neither "Goods" nor "Services".......................... 15

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

5    *Andren v. Alere, Inc.*,
       207 F. Supp. 3d 1133 (S.D. Cal. 2016) ............................................................... 14
6
     *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7       7 Cal. 4th 503 (1994) ........................................................................................ 12

8    *Ashcroft v. Iqbal*,
9       556 U.S. 662 (2009) ..................................................................................... 6, 10

10   *Astiana v. Hain Celestial Grp.*,
11      783 F.3d 753 (9th Cir. 2015) .............................................................................. 15

12   *Balzer v. Wal-Mart Stores, Inc.*,
13      2015 WL 13828418 (C.D. Cal. Feb. 25, 2015) ........................................... 3, 15

14   *Bd. of Trs. of Mill Cabinet Pension Tr. Fund for N. Cal. v. Valley Cabinet & Mfg.
       Co.*,
15      877 F.2d 769 (9th Cir. 1989) .............................................................................. 11

16
     *Bell Atl. Corp. v. Twombly*,
17      550 U.S. 544 (2007) ............................................................................................. 6

18   *Bly-Magee v. California*,
19      236 F.3d 1014 (9th Cir. 2001) .............................................................................. 6

20   *Brill v. Postle*,
21      2020 WL 2936688 (E.D. Cal. June 3, 2020) ..................................................... 16

22   *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
23      637 F.3d 1047 (9th Cir. 2011) .............................................................................. 7

24   *Carlin v. DairyAmerica, Inc.*,
       978 F. Supp. 2d. 1103 (E.D. Cal. 2013) ...................................................... 14, 15
25
     *Cholla v. Ready Mix, Inc. v. Civish*,
26      382 F.3d 969 (9th Cir. 2004) .............................................................................. 13

27   *Cooper v. Pickett*,
28      137 F.3d 616 (9th Cir. 1997) ...................................................................... 7, 9, 11

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013)..............................................................12, 13

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) .................................................................................................11

*Emery v. Visa Int'l Serv. Assn.*,
   95 Cal. App. 4th 952 (2002)......................................................................................8

*Fairbanks v. Super. Ct.*,
   46 Cal. 4th 56 (2009)..............................................................................................15

*Gyene v. Steward Fin., Inc.*,
   2013 WL 146191 (C.D. Cal. Jan. 11, 2013)...........................................................14

*Hall v. Sea World Entm't, Inc.*,
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)....................................................9, 16

*In re Capacitors Antitrust Litig.*,
   154 F. Supp. 3d 918 (N.D. Cal. 2015).......................................................................7

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) .....................................................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..........................................................................*passim*

*Kerkorian v. Samsung Elecs. Am., Inc.*,
   2019 WL 6918293 (E.D. Cal. Dec. 19, 2019).........................................3, 14, 15

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571 (1995)..............................................................................12, 13

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011)...............................................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................7

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008)..................................................................................6

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009)..............................................................................................7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:20-CV-03643-DSF-JEM

*N. Star Int'l v. Ariz. Corp. Comm'n,*
  720 F.2d 578 (9th Cir. 1983) ................................................................... 6

*Palomares v. Bear Stearns Residential Mortg. Corp.,*
  2008 WL 686683 (S.D. Cal. Mar. 13, 2008) ..................................... 3, 13

*Papasan v. Allain,*
  478 U.S. 265 (1986) ................................................................................ 6

*Peckerar v. Gen. Motors, LLC,*
  2019 WL 6825757 (C.D. Cal. July 24, 2019) ........................... 9, 10, 11

*People v. Toomey,*
  157 Cal. App. 3d 1 (1984) ....................................................................... 8

*Ponomarenko v. Shapiro,*
  287 F. Supp. 3d 816 (N.D. Cal. 2018) .............................................. 2, 14

*Rutherford Holdings, LLC v. Plaza Del Ray,*
  223 Cal. App. 4th 221 (2014) ............................................................... 15

*Sanders v. Old Dominion Freight Line, Inc.,*
  2018 WL 6321628 (C.D. Cal. June 25, 2018) ........................................ 6

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ................................................................ 6

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ........................................................... 13, 14

*Taylor v. Ornua Foods N. Am., Inc.,*
  2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ............................................ 9

*Vess v. Cib-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ...................................................... 2, 6, 9

**STATUTES**

California Consumer Legal Remedies Act, Cal. Bus. & Prof. Code § 1750 ...*passim*

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 .........*passim*

**RULES**

Federal Rule of Civil Procedure 9(b) ................................................................*passim*

Federal Rule of Civil Procedure 8 .......................................................................... 10

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 6, 13

**INTRODUCTION**

For all its length and the nearly 60 defendants named, Plaintiffs' Complaint ultimately rests on a very narrow factual premise:  the alleged failure by certain Defendants "to refund money to MLB's fans who purchased tickets for the 2020 MLB season" that were impacted by the COVID-19 pandemic.  Corr. Am. Class Action Compl. (Dkt. No. 42-1) ("Compl.") ¶ 1.  The foundation of this claim is, of course, the allegation that Plaintiffs actually purchased tickets from a Defendant MLB team or using a Defendant ticket merchant's services and that the price of that ticket was not refunded.  *Id.* ¶¶ 2, 9-31.  Defendants Ticketmaster L.L.C., Live Nation Entertainment, Inc., and Live Nation Worldwide, Inc. ("LN/TM") are named solely in their capacity as "Ticket Merchants" that allegedly failed to refund tickets for 2020 regular season games.  *Id.* ¶¶ 67-69, 89.

This claim *cannot* be pursued against LN/TM and certainly not in this forum. Every fan that purchases tickets using a LN/TM website must accept LN/TM's Terms of Use, which contain a mandatory arbitration clause requiring the user to arbitrate essentially *any* disputes related to tickets sold or distributed by LN/TM. Thus, to the extent any fan has a claim that they (1) purchased a MLB regular season ticket using LN/TM's platforms, and (2) were wrongly denied a refund, that claim can be pursued only in arbitration.  Only one Plaintiff (Ms. Terry-Bazer) alleges that she bought a relevant ticket through any of the LN/TM Defendants, *id.* ¶ 11, and LN/TM are moving to compel arbitration of her claims.[1]

So what is left?  Nine named Plaintiffs who do not allege they purchased a relevant ticket using LN/TM's ticketing platforms and do not claim to have interacted with LN/TM concerning 2020 MLB tickets at all.  Indeed, beyond Ms.

---

[1] LN/TM are concurrently filing a Motion to Compel Arbitration with respect to Ms. Terry-Bazer.  This Motion to Dismiss is directed at Plaintiffs LN/TM has not moved to compel arbitration ("Non-Purchasing Plaintiffs").  Should the Court deny LN/TM's Motion to Compel Arbitration, Defendants request this Motion be considered as to all Plaintiffs.

1    Terry-Bazer's purchase, the 50-page complaint says nothing about LN/TM other
2    than quoting a single statement by Ticketmaster about refunds for MLB games and
3    one statement by Live Nation Entertainment about refunds for concerts (not MLB
4    games). *Id.* ¶¶ 93, 95. Whatever their relevance, no Plaintiff claims to have viewed
5    or relied upon those statements. And there are no factual allegations whatsoever
6    about Live Nation Worldwide.

7        Because Non-Purchasing Plaintiffs fail to allege *any* relevant purchase or
8    dealings with LN/TM, and do not otherwise allege any facts plausibly connecting
9    LN/TM to unlawful conduct, the Complaint must be dismissed as to LN/TM. This
10   is all the more true because Plaintiffs' claims sound in fraud and therefore must meet
11   the heightened pleading standard of Federal Rule of Civil Procedure 9(b) by alleging
12   "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford*
13   *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Cib-Geigy Corp.*
14   *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

15       Plaintiffs do not come close. They do not allege that they detrimentally relied
16   on *anything* LN/TM did or said, much less supply the requisite "particularity"
17   required by the Federal Rules. Fed. R. Civ. P. 9(b). Plaintiffs' choice to name Live
18   Nation Entertainment and Live Nation Worldwide is particularly mystifying. No
19   Plaintiff alleges any transaction with these Defendants, much less any misconduct
20   by them. Nor do Plaintiffs allege a basis on which these Defendants could be held
21   liable for the alleged conduct of their corporate affiliate, Ticketmaster.

22       To the extent Non-Purchasing Plaintiffs intend to assert some type of
23   secondary or "conspiracy" liability related to tickets that they purchased from *other*
24   Defendants, that too fails to meet any pleading standard. "Conspiracy" is not a cause
25   of action in California. And even where it is asserted as a basis for secondary
26   liability on some other claim, courts require detailed allegations about "how the
27   conspiracy formed or operated," and Plaintiffs cannot "merely lump multiple
28   defendants together." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 831 (N.D. Cal.

2018); *Palomares v. Bear Stearns Residential Mortg. Corp.*, 2008 WL 686683, at *4 (S.D. Cal. Mar. 13, 2008). Plaintiffs do not allege any facts that would satisfy these standards.

The Complaint also suffers from other defects. *First*, "unjust enrichment" is not a valid claim under California law. *Kerkorian v. Samsung Elecs. Am., Inc.*, 2019 WL 6918293, at *6-7 (E.D. Cal. Dec. 19, 2019). Even if the Court were to construe Plaintiffs' unjust enrichment claim as something cognizable, like a claim for restitution, it is impermissibly duplicative of Plaintiffs' statutory claims. *Balzer v. Wal-Mart Stores, Inc.*, 2015 WL 13828418, at *4 (C.D. Cal. Feb. 25, 2015) ("[C]ourts generally dismiss quasi-contract claims that are merely duplicative of UCL . . . and CLRA claims, which already provide restitution as a remedy."). *Second*, Plaintiffs cannot state a claim under the CLRA because tickets to attend MLB games are not "goods" or "services" under the CLRA.

Accordingly, the Complaint fails to state a claim against LN/TM and should be dismissed.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS[2]

The 2020 MLB regular season was set to begin on March 26, 2020 and continue through the first week of October. Compl. ¶ 74. However, as Plaintiffs explain, the entire world has been thrust into an "unprecedented" "public health and economic crisis" as a result of the COVID-19 pandemic. *Id.* ¶ 1. Due to the risk of spreading COVID-19, U.S. public health experts advised that sporting events should not be played with fans in attendance at this time. *Id.* ¶ 85. Like other professional sports leagues, MLB decided not to proceed with its regularly scheduled season due to concerns about player, fan, and employee safety. *Id.* ¶ 75. MLB continued to postpone games as it, along with the rest of the world, monitored the COVID-19 pandemic. *Id.* ¶ 76.

---

[2] LN/TM assume the truth of Plaintiffs' allegations, as is required for a motion to dismiss. LN/TM do not admit the truth of any factual allegation in the complaint.

1   Plaintiffs are ten individuals who purchased tickets for 2020 MLB regular
2   season games.  Compl. ¶¶ 9-31.  Some Plaintiffs allegedly attempted to get refunds
3   for the tickets they purchased, *id.* ¶¶ 11-12, 18-29, but others did not, *id.* ¶¶ 9-10,
4   14-17, 30-31.  Plaintiffs claim that no refunds were issued.  *Id.* ¶¶ 9-31.

5   According to Plaintiffs, certain MLB teams stated that Plaintiffs would be
6   refunded if 2020 regular season games were "fully canceled," but not if the games
7   were merely "postponed."  *Id.* ¶ 19.  Plaintiffs detail a number of statements made
8   by MLB officials and teams concerning potential plans to play some 2020 regular
9   season games.  *E.g.*, *id.* ¶¶ 75, 88.  But Plaintiffs allege that 2020 regular season
10  games are not likely to be played with fans in attendance.  *Id.* ¶¶ 2, 80.  And thus,
11  they contend the decision to categorize games as "postponed" is merely
12  "pretext[ual]" to avoid paying refunds.  *Id.* ¶ 96.  Plaintiffs allege they will not be
13  refunded until "MLB and Commissioner Manfred . . . formally decide to cancel the
14  season."  *Id.* ¶ 79.  According to the Complaint, any changes to the regular season
15  schedule must be made by a majority of MLB teams.  *Id.* ¶ 35.  Companies like
16  Ticketmaster, who provide ticketing services to MLB teams, but are not corporate
17  affiliates of the MLB, are not alleged to have any ability to affect MLB's scheduling
18  or cancellation decisions.  *Id.*  Nor do Plaintiffs allege that LN/TM have had any
19  communications with MLB concerning scheduling or refunds.

20  Plaintiffs bring five "claims" against MLB, the Commissioner of the MLB,
21  all MLB teams and their corporate affiliates, and a few companies Plaintiffs label as
22  "Ticket Merchants."  *Id.* at pp. 1-2.  Plaintiffs assert a claim under the California
23  Consumer Legal Remedies Act ("CLRA"), two claims under California's Unfair
24  Competition Law ("UCL") (one for "unfair" business practices and one for
25  "unlawful" business practices that is derivative of the CLRA claim), one claim of
26  "civil conspiracy," and one claim for "unjust enrichment."  *Id.* ¶¶ 110-37.  Their
27  theory of liability can be summarized by the following allegations:  "Defendants
28  represented (and continue to represent) that their goods [tickets for MLB games]

1    have characteristics which they do not have—that in exchange for payment,
2    Defendants provide ticketholders access to attend in-person 2020 MLB regular
3    season games;" and that "Defendants' retention of Plaintiffs' and Class members'
4    ticket payments and failure to refund same for MLB games which are not being
5    played, and will likely be canceled or not involve spectators" caused them harm and
6    is unlawful. *Id.* ¶¶ 114, 123.

7        Plaintiffs include LN/TM as Defendants solely in their capacity as "Ticket
8    Merchants," though they do not allege that Live Nation Entertainment or Live
9    Nation Worldwide sold *any* of the tickets at issue.   Nor do Plaintiffs allege that
10   LN/TM control scheduling or refund policies for MLB games or, indeed, even
11   possess or hold the funds paid by fans for tickets sold by MLB teams.  The lengthy
12   Complaint does not make any specific allegations about Live Nation Worldwide,
13   and as to Ticketmaster and Live Nation Entertainment, says only the following:

14      • "Ticketmaster's website currently states that it refuses to refund MLB games
15        even if they are canceled." *Id.* ¶ 93.

16      • "Live Nation Entertainment, Ticketmaster's owner, issued a statement that it
17        would offer refunds and coupons for canceled and postponed shows, and
18        would be changing its policy with respect to issuing refunds for other events
19        – like concerts.  However, Live Nation failed to address refunds to
20        ticketholders who purchased 2020 MLB regular season tickets through
21        Ticketmaster." *Id.* ¶ 95.

22   The Complaint also quotes excerpts from a letter two members of Congress wrote
23   to Ticketmaster and Live Nation, although the letter does not accuse either company
24   of unlawful conduct. *Id.* ¶ 94.

25       Otherwise, the Complaint makes only vague assertions about "Defendants,"
26   or "Ticket Merchants" without specifying what, if anything, LN/TM actually did or
27   said.   *E.g.*, *id.* ¶¶ 89 ("Ticket Merchants . . . are also encouraging new ticket
28   purchases"), 115 ("Defendants are aware that their representations that the 2020

1   MLB regular season will be played are false and misleading"), 124 ("Plaintiffs and

2   Class members had no way of knowing that Defendants had no intention of

3   refunding them in the event that a public health and economic crisis were to occur.").

### LEGAL STANDARD FOR ALL CLAIMS

5       A Rule 12(b)(6) motion to dismiss for failure to state a claim "test[s] the legal

6   sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

7   581 (9th Cir. 1983). A complaint should be dismissed where it "lacks a cognizable

8   legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

9   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]ourts are not

10  bound to accept as true a legal conclusion couched as a factual allegations." *Bell*

11  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478

12  U.S. 265, 286 (1986) (internal quotation marks omitted)). "Nor does a complaint

13  suffice if it tenders naked assertions devoid of further factual enhancement."

14  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557)

15  (alterations and internal quotation marks omitted). The factual allegations "'must

16  plausibly suggest entitlement to relief, such that it is not unfair to require the

17  opposing party to be subjected to the expense of discovery and continued

18  litigation.'" *Sanders v. Old Dominion Freight Line, Inc.*, 2018 WL 6321628, at *1

19  (C.D. Cal. June 25, 2018) (Fischer, J.) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216

20  (9th Cir. 2011).

21      When a complaint is "grounded in fraud," all claims "must satisfy the

22  particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1127. "Rule 9(b)

23  demands that the circumstances constituting the alleged fraud be specific enough to

24  give defendants notice of the particular misconduct so that they can defend against

25  the charge and not just deny that they have done anything wrong." *Id.* at 1124

26  (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (alterations

27  and internal quotation marks omitted). "Averments of fraud must be accompanied

28  by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317

1    F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also*

2    *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

3    2011); Fed. R. Civ. P. 9(b).

4                                         **ARGUMENT**

5    **I.    PLAINTIFFS FAIL TO STATE A CLAIM DIRECTLY AGAINST**

6         **LN/TM BECAUSE THEY DID NOT PURCHASE TICKETS**
     **THROUGH LN/TM AND DO NOT ALLEGE THEY RELIED ON ANY**

7         **FRAUDULENT OR MISLEADING CONDUCT**

8         **A.    Non-Purchasing Plaintiffs' Claims Should Be Dismissed Because**

9              **They Did Not Purchase Goods or Services From LN/TM**

10           Plaintiffs concede that nine of the ten named Plaintiffs allege no interaction

11   of any kind with LN/TM.  *See* Pls.' Opp. to LN/TM's *Ex Parte* App. for Stay of

12   Discovery (Dkt. No. 59) at 2.  As a result, these Non-Purchasing Plaintiffs cannot

13   point to any alleged injury caused by LN/TM, and their claims should be dismissed.

14           Both the UCL and the CLRA require a plaintiff to have experienced actual

15   injury as a result of the defendant's conduct.[3]  Cal. Civ. Code § 1780(a); Cal. Bus.

16   & Prof. Code § 17204; *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009)

17   ("[I]n order to bring a CLRA action, not only must a consumer be exposed to an

18   unlawful practice, but some kind of damage must result."); *Kwikset Corp. v. Super.*

19   *Ct.*, 51 Cal. 4th 310, 320-21 (2011) ("[W]here once private suits could be brought

20   by 'any person acting for the interests of itself, its members or the general public,'

21

22   ───────────────

23   [3] Non-Purchasing Plaintiffs also lack constitutional standing.  Article III requires
     that Plaintiffs demonstrate that their injuries are "fairly traceable to the defendant's

24   allegedly unlawful conduct."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590
     (1992); *see also In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924-25 (N.D.

25   Cal. 2015) (in a putative class action, "a named plaintiff . . . must possess the
     requisite standing; it is not sufficient that a putative class member may have standing

26   to press one of the claims").  None of the Non-Purchasing Plaintiffs alleges any

27   transaction or interaction with LN/TM, and thus no Plaintiff can trace his or her
     injury to them.  Plaintiffs' conclusory assertion that there existed a civil conspiracy

28   does not cure this fatal infirmity.  *See infra* § III.

1    now private standing [under the UCL] is limited to any 'person who has suffered

2    injury in fact and has lost money or property' as a result of unfair competition.")

3    (citations omitted) (quoting Cal. Bus. & Prof. Code § 17204).   Moreover, "[a]

4    defendants' liability must be based on his personal 'participation in the unlawful

5    practices' and 'unbridled control' over the practices that are found to violate section

6    17200 or 17500." *Emery v. Visa Int'l Serv. Assn.*, 95 Cal. App. 4th 952, 960 (2002)

7    (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984)).

8          Here, Non-Purchasing Plaintiffs do not allege they purchased tickets from or

9    were otherwise exposed to LN/TM's "business act[s]."  Cal. Bus. & Prof. Code

10    § 17200.  And, as set forth below, Plaintiffs do not allege any detail about LN/TM's

11    supposed "personal participation" or "unbridled control" over any other allegedly

12    unlawful activity that caused them actual injury.  *Infra* § III(B).  As a result, Non-

13    Purchasing Plaintiffs' claims under those statutes should be dismissed.

14

15         **B.**    **All Plaintiffs' Claims Should Be Dismissed Because They Do Not Adequately Allege Any Misleading Conduct or Statements by LN/TM Under Rule 9(b)'s Heightened Pleading Standard**

16

17          To the extent Plaintiffs' claims are based on allegedly misleading conduct or

18    statements by LN/TM (as opposed to actual ticket purchases from LN/TM),

19    Plaintiffs' allegations fail under Federal Rule of Civil Procedure 9(b).

20          At various points in the Complaint, Plaintiffs claim they were *misled* into

21    purchasing tickets to MLB games and believed that they would either (1) be able to

22    attend the games no matter the exigent circumstances, or (2) they would be entitled

23    to a refund in the event of a "unprecedented" pandemic and the games did not occur.

24    Compl. ¶¶ 1, 114-15, 124 ("Plaintiffs and Class members had no way of knowing

25    that Defendants had no intention of refunding them in the event that a public health

26    and economic crisis were to occur.").  They state that "Defendants represented (and

27    continue to represent) that their goods have characteristics which they do not have—

28

1    that in exchange for payment Defendants provide ticketholders access to attend in-

2    person 2020 MLB regular season games . . . ." *Id.* ¶ 114.

3        This theory is "grounded in fraud" and each of Plaintiffs' claims must meet

4    the heightened pleading standard of Rule 9(b). *Kearns*, 567 F.3d at 1122-23, 1125,

5    1127 (applying heightened pleading standard to UCL and CLRA claims alleging that

6    Ford conspired with its dealers to mislead consumers regarding the significance of

7    its "certified per-owned" used car designation); *Peckerar v. Gen. Motors, LLC*, 2019

8    WL 6825757, at *2-3 (C.D. Cal. July 24, 2019) (applying heighted pleading standard

9    to UCL and CLRA claims alleging that General Motors "unlawfully led consumers

10   to believe that the class vehicles were free of 'serious safety hazard' caused by a

11   braking system defect"); *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *1-

12   2 (S.D. Cal. Dec. 23, 2015) (applying heightened pleading standard to UCL and

13   CLRA claims alleging consumers purchased tickets to SeaWorld based on

14   misrepresentations that its whales were "happy and healthy"); *Taylor v. Ornua*

15   *Foods N. Am., Inc.*, 2019 WL 424703, at *6 (S.D. Cal. Feb. 4, 2019) (applying

16   heightened pleading standard to "unjust enrichment" claim that the court

17   "construe[d] as a quasi-contract claim"). Therefore, Plaintiffs must allege the

18   specifics of "'the who, what, when, where, and how' of the misconduct charged."

19   *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627).

20       None of Plaintiffs' allegations even arguably shows any misrepresentation by

21   LN/TM about refunds for 2020 MLB regular season tickets or some characteristic

22   of their goods or services, and certainly not at the level of detail required to meet

23   Rule 9(b). Other than Ms. Terry-Bazer's single purchase from Ticketmaster, no

24   Plaintiff alleges that they purchased any tickets from, or interacted with, *any* of the

25   LN/TM Defendants.[4] Further, no Plaintiff (including Ms. Terry-Bazer) alleges that

26

27   [4] As noted above, and as set forth in Defendants' concurrent motion to compel

28   arbitration, Ms. Terry-Bazer's claim is subject to mandatory arbitration pursuant to

they relied on *any* representation by LN/TM about 2020 MLB tickets, let alone a representation that would establish liability under one of Plaintiffs' claims. Instead, Plaintiffs assert only legal conclusions and "naked assertions" that parrot the statutory language, like "Defendants represented (and continue to represent) that their goods have characteristics which they do not have," Compl. ¶ 114, and "Defendants' failure to refund consumers their payments for games not being play[ed] during a historic, world-wide health and economic crisis – is immoral, unethical, oppressive, and substantially injures consumers." *Id.* ¶ 123.    Those allegations are not enough under Rule 8's general pleading standard. *Iqbal*, 556 U.S. at 678 (a complaint is deficient under Rule 8 if it "tenders naked assertions devoid of further factual enhancement.") (internal quotation marks omitted).   And their failure is even more stark under Rule 9(b)'s heightened standard.

Courts often dismiss claims with far more details than Plaintiffs' Complaint. In *Kearns*, the plaintiff alleged that Ford and its dealers misrepresented the quality and benefits of its "certified pre-owned" used car designation in violation of the CLRA and UCL. *Kearns*, 567 F.3d at 1123-24. The plaintiff alleged that, in reliance on those representations, plaintiffs purchased vehicles that were "not any safer, more reliable, or more roadworthy than a regular used vehicle." *Id.* at 1124. The Court held that the complaint was properly dismissed because the plaintiff "fail[ed] to allege . . . the particular circumstances surrounding such representations. Nowhere . . . [did] Kearns specify what the television advertisements or other sales materials specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material." *Id.* at 1126. The same was true in *Peckerar v. General Motors*, 2019 WL 6825757 (C.D. Cal. July 24, 2019). There, the plaintiffs alleged that General Motors, in violation of the UCL and CLRA, "unlawfully led consumers to believe that [its] vehicles were free of a 'serious safety hazard' caused

---

Ticketmaster's Terms of Use.   Allegations regarding her purchase are therefore irrelevant to the claims of the Non-Purchasing Plaintiffs.

1    by a braking system." *Peckerar*, 2019 WL 6825757, at *2.  The court dismissed the
2    complaint because the plaintiffs "adequately identif[ied] the omission that
3    Defendant allegedly made, but fail[ed] to plead *when*, *where*, and *how* the omission
4    was made." *Id.* at *3.

5         Unlike the plaintiffs in *Kearns* and *Peckerar*, Plaintiffs here do not identify
6    *any* alleged misrepresentation on which they relied, or indeed any statement made
7    by LN/TM at all prior to a Plaintiff purchasing a ticket.  Nor, of course, do Plaintiffs
8    allege "the who, what, when, where, and how" for any such misstatement.  *Cooper*,
9    137 F.3d at 627.

10   **II.    PLAINTIFFS DO NOT (AND CANNOT) STATE CLAIMS AGAINST
11           LIVE    NATION    ENTERTAINMENT    OR    LIVE    NATION
         WORLDWIDE ON THE BASIS OF *TICKETMASTER'S* ALLEGED
12         CONDUCT**

13        Plaintiffs' Complaint does not state why Live Nation Entertainment or Live
14   Nation Worldwide are named as defendants, given that no Plaintiff alleges that they
15   purchased tickets from (or relied on any conduct or statements by) those entities.  If
16   Plaintiffs believe that they may assert claims against those two entities based on Ms.
17   Terry-Bazer's alleged purchase from their corporate affiliate, Ticketmaster,
18   Plaintiffs are wrong.

19        "A basic tenet of American corporate law is that the corporation and its
20   shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474
21   (2003).  It is the "rare exception" that a court pierces the corporate veil and makes a
22   corporate affiliate liable for the conduct of a distinct company.  *Id* at 475.  Plaintiffs
23   would need to show (1) "the amount of respect given to the separate identity of the
24   corporation by its shareholders"; (2) "the degree of injustice visited on the litigants
25   by recognition of the corporate entity"; and (3) "the fraudulent intent of the
26   incorporators." *Bd. of Trs. of Mill Cabinet Pension Tr. Fund for N. Cal. v. Valley
27   Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir. 1989).  Plaintiffs do not allege any
28   of these factors.  Nor do Plaintiffs allege that LN/TM abused the corporate form;

1   indeed, the Complaint concedes they are separate companies.  Compl. ¶¶ 67-69.

2   Thus, Plaintiffs allege no basis for treating LN/TM as a single entity for the purposes

3   of this case and, given the lack of any allegations against them, Live Nation

4   Entertainment and Live Nation Worldwide should be dismissed.

5   **III.   PLAINTIFFS  FAIL  TO  ALLEGE  FACTS  SUFFICIENT  TO**

6   **ESTABLISH SECONDARY "CONSPIRACY" LIABILITY**

7        Beyond their failure to allege any direct liability theory, Plaintiffs also fail to

8   state any ground on which LN/TM might be secondarily liable for conduct by any

9   other Defendant, such as the statements allegedly made by various MLB teams and

10  their employees. *Id.* ¶¶ 19-21, 28, 34, 75-78 (pp. 18-31).

11       Plaintiffs title one of their causes of action "Conspiracy," *id.* ¶¶ 130-34,

12  apparently trying to make each Defendant liable for the conduct of all other

13  Defendants.  But conspiracy is not a cause of action in and of itself.  Rather, it is a

14  legal doctrine that may impose secondary liability for torts committed by others.

15  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994)

16  ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on

17  persons who, although not actually committing a tort themselves, share with the

18  immediate tortfeasors a common plan or design in its perpetration.").  Plaintiffs'

19  conspiracy "claim" should be dismissed on that basis alone.

20       Plaintiffs also fail to plead any of the facts necessary to invoke the doctrine of

21  civil conspiracy.  Plaintiffs must allege facts that would establish "(1) the formation

22  and operation of the conspiracy, (2) wrongful conduct in furtherance of the

23  conspiracy, and (3) damages arising from the wrongful conduct." *Craigslist Inc. v.*

24  *3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013) (quoting *Kidron v. Movie*

25  *Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).  To show the "formation

26  and operation of the conspiracy," Plaintiffs must show "(i) knowledge of wrongful

27  activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the

28  wrongful activity." *Id.* (citing *Kidron*, 40 Cal. App. at 1581).  Further, where a

plaintiff alleges that a defendant is secondarily liable for a claim that must meet Rule 9(b)'s heightened pleading standard, the conspiracy allegations must also meet a heightened pleading standard. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Palomares*, 2008 WL 686683, at *4 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)).

The Complaint contains very few allegations concerning the supposed "conspiracy," all of which are conclusory and insufficient. *E.g.*, Compl. ¶¶ 96, 131 ("Plaintiffs were harmed by MLB's, MLB Ticket Merchants' and Team Defendants' coordination and cooperation as to a pretext of 'postponed' games in order to avoid refunds to Plaintiffs and Class members . . ."), 87, 132 ("This agreement, cooperation and coordination by all Defendants to avoid refunding money to Class Members caused, and continues to cause, Plaintiffs and Class members harm.  Each of the Defendants is responsible, as each was aware that other Defendants have not refunded any money to Plaintiffs and Class Members for MLB 2020 ticket purchasers . . ."), 98, 133 ("[E]ach of the aforementioned Defendants lent aid and encouragement and knowingly ratified and adopted the acts of the other.").

None of these allegations plausibly identifies the formation or existence of a conspiracy (*i.e.*, knowledge, intent, and actual agreement) between LN/TM and anyone else.  Rather, these are "legal conclusions cast in the form of factual allegations" that should be rejected because "those conclusions cannot reasonably be drawn from the facts alleged." *Cholla v. Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citations omitted) (reviewing ruling under Fed. R. Civ. P. 12(b)(6)); *see also Swartz*, 476 F.3d at 765 ("Conclusory allegations that Presidio and DB 'knew that KPMG and B & W were making false statements to clients, including Swartz, and thus were acting in concert with KPMG and B & W' and

1   'were acting as agents [of KPMG and B & W]' and were 'active participants in the

2   conspiracy' without any stated factual basis are insufficient as a matter of law.");

3   *Shapiro*, 287 F. Supp. 3d at 831 ("[T]he Court is unable to piece together specific

4   factual allegations that could state a claim for civil conspiracy.  There is no alleged

5   'meeting of the minds' between Ponomarenko and Krogh, or even any facts

6   regarding actions either of these individuals took in furtherance of the conspiracy.

7   The Court cannot determine from Shapiro's allegations how the conspiracy formed

8   or operated, and whether Ponomarenko had knowledge of or intent to aid in wrongful

9   activity, or even what the alleged wrongful activity entailed.").  Plaintiffs simply

10  "lump multiple defendants together" and do not "differentiate" LN/TM from anyone

11  else, which is insufficient as a matter of law.  *See Gyene v. Steward Fin., Inc.*, 2013

12  WL 146191, at *7 (C.D. Cal. Jan. 11, 2013) (Fischer, J.) (quoting *Swartz*, 476 F.3d

13  at 764-65).

## IV.   PLAINTIFFS' "UNJUST ENRICHMENT" AND CLRA CLAIMS FAIL FOR OTHER, INDEPENDENT REASONS

16          The pleading defects described above are sufficient to dismiss all of Plaintiffs'

17  claims against LN/TM.  However, their claims fail for additional reasons.

### A.    Plaintiffs' "Unjust Enrichment" Claim Is Not Cognizable and Is Duplicative

20          Plaintiffs purport to bring a stand-alone cause of action for "Unjust

21  Enrichment." Compl.  ¶¶ 135-37. "California law does not recognize unjust

22  enrichment as a cause of action or remedy." *Kerkorian*,  2019 WL 6918293, at *6-

23  7.  "Rather, it is a 'general principle underlying various legal doctrines and

24  remedies," that is 'synonymous with restitution.'"  *Id.* (quoting *Carlin v.*

25  *DairyAmerica, Inc.*, 978 F. Supp. 2d. 1103, 1118 (E.D. Cal. 2013)). Because

26  Plaintiffs allege a stand-alone unjust enrichment claim, the Court should dismiss the

27  claim on that basis. *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal.

28

1    2016) (dismissing "unjust enrichment" claim because "unjust enrichment cannot

2    stand alone as an independent claim for relief.").

3        Courts will sometimes construe an "unjust enrichment" claim "'as a quasi-

4    contract claim seeking restitution.'"[5] *Astiana v. Hain Celestial Grp.*, 783 F.3d 753,

5    762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal.

6    App. 4th 221, 231 (2014)).  Even construing the claim as one for quasi-contractual

7    recovery, "courts generally dismiss quasi-contract claims that are merely duplicative

8    of UCL . . . and CLRA claims, which already provide restitution as a remedy."

9    *Balzer*, 2015 WL 13828418, at *4 (collecting cases).  Thus, even if the Court were

10   to construe Plaintiffs' unjust enrichment claim as restitution, it should be dismissed

11   as impermissibly duplicative of Plaintiffs' other claims.  *Kerkorian*, 2019 WL

12   6918293, at *7 ("[R]estitution cannot be duplicative of plaintiff's contract, torts, or

13   statutory claims."); *Carlin*, 978 F. Supp. 2d. at 1118.

14       **B.   Plaintiffs' CLRA Claim Fails Because Tickets to MLB Games Are**

15       **Neither "Goods" nor "Services"**

16       The CLRA applies to any "transaction intended to result or that results in the

17   sale or lease of goods or services . . . ."  Cal. Civ. Code. § 1770(a).  "Goods" are

18   defined as "tangible chattels . . ." and "[s]ervices" are defined as "work, labor, and

19   services for other than a commercial or business use, including services furnished in

20   connection with the sale or repair of goods."  *Id.* §§ 1761(a), (b).  The California

21   Supreme Court, in deciding life insurance was neither a "good" nor a "service" under

22   the CLRA explained that the legislative history of the CLRA indicates it was not

23   intended to cover transactions involving entertainment or recreation (among other

24   things).  *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 60-61 (2009).  Accordingly, courts

---

[5] Non-Purchasing Plaintiffs fail to allege they conferred any benefit on LN/TM (*i.e.*, paid money to LN/TM in exchange for tickets).  Thus, they cannot even facially allege a quasi-contractual relationship between themselves and LN/TM, and their "unjust enrichment" claims fail for that reason, too.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   have not extended the definition of "goods" or "services" beyond their core meaning.

2   *Hall*, 2015 WL 9659911, at *14-15 (holding that tickets to attend SeaWorld were

3   neither goods nor services under the CLRA); *Brill v. Postle*, 2020 WL 2936688, at

4   *5 (E.D. Cal. June 3, 2020) (holding that poker games at a casino were not goods or

5   services under the CLRA); *In re Sony Gaming Networks & Customer Data Sec.*

6   *Breach Litig.*, 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012) (holding that software was

7   not a good or service under the CLRA).

8         Here, MLB tickets are neither "goods" nor "services."  A ticket is a temporary,

9   conditional license to attend an event.  The value of the ticket is not the piece of

10  paper (or online data file) itself, so it is not a "tangible chattel."  And, like the Court

11  found in *Hall*, construing a ticket to an event as a "service" "requires a strained and

12  unnatural construction of the term."  *Hall*, 2015 WL 9659911, at *15.  Accordingly,

13  the CLRA claim and derivative UCL claim should be dismissed on this basis as well.

14  **CONCLUSION**

15        For the foregoing reasons, LN/TM's motion to dismiss should be granted.

16  Dated:  July 2, 2020          Respectfully Submitted,

17            LATHAM & WATKINS LLP

19  By: *Timothy L. O'Ma——*

20  Daniel M. Wall (Bar No. 102580)
      *dan.wall@lw.com*

21  Timothy L. O'Mara (Bar No. 212731)
      *tim.o'mara@lw.com*

22  Andrew Gass (Bar No. 259694)
      *andrew.gass@lw.com*

23  505 Montgomery Street, Suite 2000

24  San Francisco, California  94111-6538
    Telephone:  +1.415.391.0600

25  Facsimile:  +1.415.395.8095

26  *Attorneys for Defendants Ticketmaster L.L.C., and Live Nation*

27  *Entertainment, Inc., and Live Nation Worldwide, Inc.*