LATHAM & WATKINS LLP
Daniel M. Wall (Bar No. 102580)
*dan.wall@lw.com*
Timothy L. O'Mara (Bar No. 212731)
*tim.o'mara@lw.com*
Andrew M. Gass (Bar No. 259694)
*andrew.gass@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C., Live Nation Entertainment, Inc., and Live Nation Worldwide, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MATTHEW AJZENMAN; SUSAN TERRY-BAZER; BENNY WONG; ALEX CANELA; JEREMY WOOLLEY; AMANDA WOOLLEY; ANNE BERGER; CATHEY MATTINGLY; BLAKE WOLLAM; and KRYSTAL MOYER, on behalf of themselves, and all others who are similarly situated,

Plaintiffs,

v.

OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL, et al.,

Defendants.

Case No. 2:20-cv-03643-DSF-JEM

**DEFENDANTS TICKETMASTER L.L.C., LIVE NATION ENTERTAINMENT, INC., AND LIVE NATION WORLDWIDE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: September 14, 2020
Time: 1:30 p.m.
Place: Courtroom 7D
Judge: Honorable Dale S. Fischer

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff Manifested Assent to the Terms When She Signed In and Purchased Tickets on the Ticketmaster Website .......... 2

1. The Facts Demonstrating Plaintiff's Agreement Are Undisputed .......... 2

2. The Weight of Authority Demonstrates That Ticketmaster's Website Provided Adequate Notice of the Terms .......... 3

3. The Acts Required for Acceptance of the Terms on the Sign-In and Purchase Pages Are Objectively Clear .......... 9

B. The Parties Clearly and Unmistakably Delegated Arbitrability to JAMS, and the Case Must Be Sent To Arbitration .......... 11

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aanderud v. Superior Court*,
13 Cal. App. 5th 880 (2017) ........ 12

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) ........ 9

*Arena v. Intuit Inc.*,
No. 19-cv-02546-CRB, 2020 WL 1189849 (N.D. Cal. Mar. 12, 2020) ........ 1, 7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........ 11

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ........ 8

*Dickey v. Ticketmaster LLC*,
No. CV 18-9052-GW(GJSx), 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ........ 5, 7, 10, 11

*Dohrmann v. Intuit, Inc.*,
No. 20-15466, 2020 WL 4601254 (9th Cir. Aug. 11, 2020) ........ 1, 4, 7, 8

*Himber v. Live Nation Worldwide, Inc.*,
No. 16-CV-5001(JS)(GRB), 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ........ 10, 11

*Lee v. Ticketmaster L.L.C.*,
No. 19-15673, 2020 WL 3124256 (9th Cir. June 12, 2020) ........ *passim*

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 11

*Nevarez v. Forty Niners Football Co., LLC*,
No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ........ 5, 10, 11

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 4, 5, 8

## I.   INTRODUCTION

Plaintiff Susan Terry-Bazer ("Plaintiff") affirmatively agreed to arbitrate her claims against Defendants Ticketmaster L.L.C., Live Nation Entertainment, Inc., and Live Nation Worldwide, Inc. (collectively, "LN/TM") on at least two occasions: when she (1) signed into her Ticketmaster account and (2) purchased the baseball tickets underlying her claims on the Ticketmaster website. Plaintiff does not dispute that she signed into her Ticketmaster account and purchased these tickets. She also does not dispute that the notices and Terms of Use ("Terms") presented to her when she did so were just as conspicuous as the notices that the Ninth Circuit and other courts found sufficient in *Lee*, *Dickey*, and other cases enforcing the same arbitration provision at issue here. This authority compels the conclusion that the webpages Plaintiff saw provided adequate notice of LN/TM's Terms and that Plaintiff manifested assent to those Terms—including the arbitration clause—by signing in and purchasing her tickets on the Ticketmaster website.[1]

Plaintiff's response is that Ticketmaster's notices are too "inconspicuous" and "confusing" to bind her to the Terms, relying on a few cases where courts deemed other websites' notices of terms insufficient. But just last week, the Ninth Circuit *reversed* Plaintiff's lead case and ordered arbitration, *see Dohrmann v. Intuit, Inc.*, No. 20-15466, 2020 WL 4601254, at *1, *3 (9th Cir. Aug. 11, 2020), *rev'g Arena v. Intuit Inc.*, No. 19-cv-02546-CRB, 2020 WL 1189849 (N.D. Cal. Mar. 12, 2020), and Plaintiff's other cases bear no resemblance to the facts here. Plaintiff also asserts without basis that LN/TM's arbitration clause is unenforceable because it fails to

---

[1] Plaintiff asserts that she "requested a refund from Ticketmaster in late April 2020" for her purchase of the baseball tickets underlying her claims, but that she "ha[s] not received a refund." Decl. of Pl. Susan Terry-Bazer in Opp'n to Mot. to Compel Arbitration ("Terry-Bazer Decl.") (ECF No. 82-1) ¶ 6. Plaintiff fails to acknowledge that, since June 3, 2020, LN/TM have made a refund available to her but she has not requested one. Decl. of Kent Bissell in Supp. of LN/TM's Reply in Supp. of Their Mot. to Compel Arbitration ¶¶ 5-6. In any event, the status of Plaintiff's refund is irrelevant to whether Plaintiff agreed to arbitrate her claims (which she did).

satisfy the rules of JAMS (the designated arbitral forum), but that enforceability issue was expressly delegated to the arbitrator and cannot properly be resolved by this Court. None of Plaintiff's arguments provide a sound basis for declining to enforce the Terms. The Court should grant LN/TM's motion to compel arbitration.

## II. ARGUMENT

### A. Plaintiff Manifested Assent to the Terms When She Signed In and Purchased Tickets on the Ticketmaster Website

#### 1. <u>The Facts Demonstrating Plaintiff's Agreement Are Undisputed</u>

Plaintiff acknowledges that she used the Ticketmaster website to purchase tickets to a Yankees game in March 2020. Terry-Bazer Decl. ¶ 4. Plaintiff does not dispute that, when she signed into her Ticketmaster account to purchase those tickets, she was required to input her user credentials and click a "Sign In" button, at which point she was notified that, "By continuing past this page, you agree to the **Terms of Use** . . .":

Decl. of Kimberly Tobias in Supp. of LN/TM's Mot. to Compel Arbitration ("Tobias Decl.") (ECF No. 62) ¶ 4 & Ex. 1. Nor does Plaintiff dispute that, to purchase her tickets, she was required to fill out payment and billing information and click a

"Place Order" button, at which point she was notified, "By continuing past this page and clicking 'Place Order', you agree to our **Terms of Use**":

*Id.* ¶ 6 & Ex. 2. And it is undisputed that, on both the sign-in and purchase pages, the words "**Terms of Use**" appeared in bold, in contrasting color text, and hyperlinked to the full text of the Terms. *Id.* ¶¶ 4, 6 & Exs. 1-2.[2]

2. <u>The Weight of Authority Demonstrates That Ticketmaster's Website Provided Adequate Notice of the Terms</u>

Under well-established law, these undisputed facts demonstrate that Plaintiff manifested assent to the Terms when she clicked the "Sign In" and "Place Order" buttons on the Ticketmaster website. *See* LN/TM Mem. of P. & A. in Supp. of Mot. to Compel Arbitration ("Mot.") (ECF No. 61-1) at 9-13. Nevertheless, Plaintiff insists that she did not agree to the Terms because the notices on Ticketmaster's sign-in and purchase pages are "inconspicuous" and the hyperlinks to the Terms on these pages are not "accompanied by clear instructions on how consumers should

---

[2] Plaintiff asserts that LN/TM submitted screenshots of the sign-in and purchase pages that Plaintiff "would have seen" when she used the Ticketmaster website to purchase tickets in March 2020, rather than "the actual pages viewed by Plaintiff Terry-Bazer." Pl.'s Opp'n to Mot. to Compel Arbitration ("Opp'n") (ECF No. 82) at 8. LN/TM's declaration made clear that the screenshots submitted were of the relevant Ticketmaster websites in place as of March 2020, and thus that Plaintiff would have been required to navigate through them and accept the Terms at least twice to complete her purchase. *See* Tobias Decl. ¶¶ 4, 6. Under blackletter law, those are the relevant pages for the Court to consider.

objectively manifest agreement to the [Terms]."[3] Opp'n at 3, 12. Plaintiff's arguments are unsupported by the case law.

The Ninth Circuit has explained that the determination of whether a "reasonably prudent [website] user would have inquiry notice" of the terms of use depends on multiple factors, including "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see also Dohrmann*, 2020 WL 4601254, at *1 (quoting *Nguyen*, 763 F.3d at 1177). Courts routinely find agreement "where the website contains an explicit textual notice that continued use," or some other affirmative act, "will act as a manifestation of the user's intent to be bound." *Nguyen*, 763 F.3d at 1177; *see also Lee v. Ticketmaster L.L.C.*, No. 19-15673, 2020 WL 3124256, at *2 (9th Cir. June 12, 2020); *Dohrmann*, 2020 WL 4601254, at *1.

Numerous courts—including the Ninth Circuit in *Lee*—have relied on these standards and found, based on the same and similar notices that Plaintiff saw, that the Ticketmaster website provides sufficient notice to bind consumer to LN/TM's Terms. The sign-in and purchase pages that Plaintiff viewed on the Ticketmaster website notified her that she would "agree to the Terms of Use" by (1) signing in and (2) placing her order for baseball tickets. Tobias Decl. ¶¶ 4, 6 & Exs. 1-2. On both pages, the notice is placed immediately above the "Sign In" or "Place Order" button, and the phrase "Terms of Use" is in bright blue, bolded text against an uncluttered background, and hyperlinks to the full text of the Terms. *Id.* A link to

---

[3] Plaintiff also devotes two pages of her opposition to an irrelevant question: whether the "browsewrap" notice of Terms at the bottom of the Ticketmaster website homepage and other pages was sufficient, *by itself*, to bind Plaintiff to the Terms. Opp'n at 6-8. But Plaintiff manifested assent on multiple other occasions through affirmative conduct: (1) when she clicked "Sign In" after receiving a conspicuous notice that doing so would signify consent; and (2) when she clicked "Place Order" after receiving an equally conspicuous notice. These agreements bind Plaintiff, independent of the "browsewrap" notice. *See* Mot. at 13 & n.5.

the Terms is "not merely posted on Ticketmaster's website at the bottom of the screen"; rather, the website "require[s] users to 'affirmatively acknowledge the agreement before proceeding' [past the sign-in and purchase pages], and 'the website contain[s] an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound.'" *Lee*, 2020 WL 3124256, at *2 (quoting *Nguyen*, 763 F.3d at 1176-77) (internal citation omitted); *see also Dickey v. Ticketmaster LLC*, No. CV 18-9052-GW(GJSx), 2019 WL 9096443, at *5-7, *10 (C.D. Cal. Mar. 12, 2019); *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *7-10 (N.D. Cal. Aug. 15, 2017). Accordingly, Plaintiff "validly assented to Ticketmaster's Terms of Use, including the arbitration provision, [when she] clicked the 'Sign In' button when signing into [her] Ticketmaster account" and also when she "clicked the 'Place Order' button when placing [her] order for tickets." *Lee*, 2020 WL 3124256, at *2.

Plaintiff has no answer to *Lee*, *Dickey*, and the other cases that enforce LN/TM's Terms. In fact, Plaintiff says almost nothing about *Lee* or *Dickey*, arguing only that evaluating constructive notice is so "fact-dependent" as to make *Lee* and *Dickey* "unavailing" (Opp'n at 2), and that LN/TM's arbitration clause "cannot be binding merely by virtue of prior court approval when the appearance of their websites are constantly changing" (*id.* at 5)—even though the LN/TM websites and Terms evaluated in those cases are nearly *identical* to what Plaintiff herself saw. For example, here is the notice endorsed by the Ninth Circuit just two months ago in

*Lee*, *see* Decl. of Timothy L. O'Mara in Supp. of LN/TM's Reply in Supp. of Mot. to Compel Arbitration ("O'Mara Decl.") Ex. 1:



And here is the sign-in page that Plaintiff Terry-Bazer saw, *see* Tobias Decl. Ex. 1:



Like the sign-in page that Plaintiff saw, the *Lee* sign-in page contained language stating, "By continuing past this page, you agree to our **Terms of Use**," with the words "Terms of Use" in bright blue font and hyperlinked. The main difference

between the sign-in screens at issue here versus *Lee* is that the "By continuing past this page . . ." language appeared *above* the "Sign In" button that Plaintiff saw, whereas in *Lee* that language appeared below the button—but this change, if anything, makes the notice that Plaintiff saw *more* conspicuous.[4] The purchase page at issue in *Lee* was also substantially the same as the one presented to Plaintiff. *Compare* O'Mara Decl. Ex. 2 (*Lee* purchase page) ("By clicking 'Place Order', you agree to our **Terms of Use**," placed above the "Place Order" button, with "Terms of Use" in blue font and hyperlinked), *with* Tobias Decl. Ex. 2 (Plaintiff Terry-Bazer's purchase page) ("By continuing past this page and clicking 'Place Order,' you agree to our **Terms of Use**," with "Terms of Use" in blue font and hyperlinked).

Unable to distinguish *Lee*, *Dickey*, or any of the other cases enforcing the Ticketmaster notices and Terms, Plaintiff relies on a few cases addressing *different* notices and terms. Plaintiff places the most reliance on a district court opinion declining to enforce an arbitration agreement in *Arena v. Intuit Inc.*, 2020 WL 1189849. ***The Ninth Circuit reversed that decision last week***, *see Dohrmann*, 2020 WL 4601254, at *1, *3. The *Intuit* case involved a sign-in page where the following language appeared in italics below the "Sign In" button: "*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement*." *Dohrmann*, 2020 WL 4601254, at *2. "The terms 'Turbo Terms of Use,' 'TurboTax Terms of Use,' and 'Privacy Statements' were each light blue hyperlinks which, if clicked, directed the user to a new

---

[4] While the decision in *Dickey* addressed Ticketmaster's account-creation page, that page's appearance and the notice also were substantially similar to the sign-in page that Plaintiff saw. *Compare* O'Mara Decl. Ex. 3 (*Dickey* account creation page) (including the language, "By submitting, you agree to our **Terms** and **Purchase Policy**. . . " above a "Sign Up" button, with the bolded words in blue font and hyperlinked), *with* Tobias Decl. Ex. 1 (Plaintiff Terry-Bazer's sign-in page) (including the language, "By continuing past this page, you agree to the **Terms of Use** . . ." above a "Sign In" button, with the bolded words in blue font and hyperlinked).

webpage," and the "TurboTax Terms of Use" hyperlink directed users to a copy of the Intuit terms of use. *Id.* The Ninth Circuit found this notice sufficient because it provided "explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Id.* (quoting *Nguyen*, 763 F.3d at 1176). The court explained that the disclaimer and hyperlinked terms were "conspicuous" and "provided sufficient notice" because "they were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered." *Id.* (citing, *inter alia*, *Lee*, 2020 WL 3124256, at *2). Thus, far from supporting Plaintiff's position, the Ninth Circuit's reversal in *Intuit* erodes the principal support for Plaintiff's argument and confirms that Ticketmaster's webpages placed Plaintiff on reasonable notice that she was agreeing to arbitration when she signed in and purchased her tickets.

      The other case on which Plaintiff principally relies, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019), also does not help Plaintiff. In *Colgate*, the defendant's sign-up page contained a hyperlink to the terms and conditions that—unlike the bright blue and bolded hyperlinks on Ticketmaster's sign-in and purchase pages—"was not a different color, underlined, italicized, or in any way visually distinct from the surrounding text." *Colgate*, 402 F. Supp. 3d at 764. The court found that the notice of terms on the defendant's sign-up page was insufficient to put the plaintiffs on inquiry notice, explaining that "[u]sers cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link." *Id.* at 765. Here, on the other hand, Plaintiff was confronted with notices of the Terms that identified the hyperlinks to the Terms in a bold, different color font that is clearly distinguishable from the surrounding text. *See* Tobias Decl. ¶¶ 4, 6 & Exs. 1-2. *Colgate* is therefore inapposite, particularly given that multiple courts have held that Ticketmaster webpages substantially similar to the ones at issue here

provide constructive notice of the Terms.[5]

3. The Acts Required for Acceptance of the Terms on the Sign-In and Purchase Pages Are Objectively Clear

Plaintiff also argues that she did not objectively manifest assent to LN/TM's Terms because the phrases "By continuing past this page" (on Ticketmaster's sign-in page) and "By continuing past this page and clicking 'Place Order'" (on Ticketmaster's purchase page) are "confusing," but she cites no authority rejecting language similar to what is at issue here. *See* Opp'n at 12-15. The Ticketmaster website is not confusing. The sign-in page informs users, directly above a button saying "Sign In," that by "continuing past" the page the user accepts the Terms. *See* Tobias Decl. ¶ 4 & Ex. 1. And the purchase page informs users, directly above a button saying "Place Order," that by "continuing past" the page and "clicking 'Place Order,'" the user accepts the Terms. *Id.* ¶ 6 & Ex. 2. The only way to interpret each of these webpages is that, by completing the transaction that is the entire purpose of the page (*i.e.*, by signing in or placing an order), the user accepts the Terms.

Many courts have held that the same or similar language, combined with a "Sign In" or "Place Order" button, is sufficient to bind users to LN/TM's Terms. *See, e.g.*, *Lee*, 2020 WL 3124256, at *2 (finding that plaintiff accepted the Terms by "signing into his Ticketmaster account, where, three lines below the [Sign In] button, the website displayed the phrase, '*By continuing past this page*, you agree to our Terms of Use,' as well as each time he clicked the 'Place Order' button when placing an order for tickets, where directly above that button, the website displayed the

---

[5] Citing *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017), Plaintiff also asserts that "[m]erely using different color for text in an agreement . . . is insufficient." Opp'n at 9. But *Applebaum* is also distinguishable, because it involved a sign-up page that "did not alert reasonable consumers . . . that clicking [a box] and then [a] pink 'Next' bar at the bottom of the screen constituted acceptance of a contract." *Id.* at 466. The notices on Ticketmaster's sign-in and purchase pages, by contrast, clearly alert consumers that they accept the Terms by signing in and placing an order, respectively. *See supra* Section II.A.2.

phrase, '*By clicking "Place Order,"* you agree to our Terms of Use'" (emphasis added)); *Nevarez*, 2017 WL 3492110, at *7 (finding that plaintiff accepted the Terms by, *inter alia*, signing into their Ticketmaster accounts where, on the sign-in page, "[b]elow the 'Sign In' button is the sentence . . . '*By continuing past this page*, you agree to our terms of use,'" and where "[b]elow the 'Submit Order' button is the sentence . . . '*By continuing past this page*, you agree to our terms of use'" (emphasis added)); *Himber v. Live Nation Worldwide, Inc.*, No. 16-CV-5001(JS)(GRB), 2018 WL 2304770, at *2, *5 (E.D.N.Y. May 21, 2018) (finding that plaintiff accepted the Terms where, *inter alia*, "the customer is required to click a 'Sign In' button, which appears directly above a notice stating that '*[b]y continuing past this page*, you agree to our Terms of Use,'" and where, "[t]o complete each purchase, the customer clicks a 'Place Order' button, while a notice immediately above the button informs the customer that '*By clicking "Place Order"*, you agree to our Terms of Use'" (emphasis added)); *see also Dickey*, 2019 WL 9096443, at *7 ("[T]he Disclosure above the Sign Up button [on Ticketmaster's website] explicitly indicated that *by submitting—i.e., by clicking the button directly below the Disclosure*—Plaintiff accepted the [Terms]." (emphasis added)). Simply put, a reasonable consumer prompted to sign in or to purchase tickets would understand the phrase "by continuing past this page" or "by continuing past this page and clicking 'Place Order,'" appearing immediately next to a button that unambiguously completes the transaction for which the page exists, to refer to clicking the button and continuing the transaction.

Finally, Plaintiff makes a convoluted argument that signing in and placing an order on the Ticketmaster website cannot be "an objective manifestation of assent" because a consumer might conclude that she *already* agreed to the Terms by taking some other action (*e.g.*, clicking on the hyperlink to the Terms or browsing the website), and therefore "LN/TM's purported method of manifesting assent can reasonably be triggered countless ways other than signing-in." Opp'n at 14; *see also*

Opp'n at 12-16. This makes no sense. Whether Plaintiff agreed to the Terms more than once does not change the analysis of whether she agreed to the Terms on the sign-in and purchase pages. If Plaintiff was on reasonable notice of the Terms (she was) and proceeded to sign into her account and purchase tickets (she did), Plaintiff manifested her assent.

### B. The Parties Clearly and Unmistakably Delegated Arbitrability to JAMS, and the Case Must Be Sent To Arbitration

Beyond her acceptance of the Terms, Plaintiff also raises questions about the enforceability of the arbitration agreement itself. Specifically, Plaintiff argues that the arbitration clause is "unenforceable" because it purportedly falls short of the JAMS's "Consumer Arbitration Standards of Minimum Fairness." Opp'n at 3, 16-19. This is a "gateway" question concerning the arbitrability of the dispute. Where the arbitration clause clearly and unmistakably delegates questions of arbitrability to the arbitrator, such questions must be sent to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); Mot. at 8.

The arbitration clause in the Terms gives the arbitrator "exclusive authority . . . to resolve all disputes arising out of or relating to the ***interpretation, applicability, enforceability or formation of this Agreement*** . . . ." Tobias Decl. Ex. 5 (emphasis added). Plaintiff does not dispute that this language is "clear and unmistakable" evidence of the parties' intent to submit the question of arbitrability to the arbitrator. *See* Mot. at 13-15 (citing, *inter alia*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)).[6] Instead, Plaintiff asserts that the arbitration clause itself is "unenforceable"—but this is a question that the Terms clearly and unmistakably delegate to the arbitrator. *See* Tobias Decl. Ex. 5. Plaintiff's challenge

---

[6] Indeed, numerous courts have found that this exact language in LN/TM's Terms "clearly and unmistakably demonstrates the parties' intent to delegate the question of arbitrability to the arbitrator." *See* Mot. at 15 (citing *Himber*, 2018 WL 2304770, at *5; *Dickey*, 2019 WL 9096443, at *8; *Nevarez*, 2017 WL 3492110, at *14; *Lee*, 2019 WL 9096442, at *2).

to the enforceability of the arbitration clause therefore must be sent to arbitration. *See Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 897 (2017) ("[I]t is up to the arbitrator to determine whether this dispute is arbitrable, which includes whether the arbitration provision meets the minimum standards of fairness such that JAMS will administer the arbitration [and] whether the arbitration provision is enforceable[.]").

If the Court reaches Plaintiff's challenges to the arbitration clause, the result would be the same: this case must be sent to arbitration. Plaintiff's argument that the arbitration clause fails to meet JAMS's minimum standards rests on a parade of incredibly strange readings of various portions of the provision. For example, Plaintiff claims that the arbitration provision contained in the Terms inadequately "explains what arbitration is," but the provision clearly contrasts "binding arbitration" from judicial proceedings, explaining that "there is no judge or jury in arbitration, and court review of an arbitration award is limited." Opp'n at 17; *see* Tobias Decl. Ex. 5. Plaintiff also argues that the class action waiver in the arbitration provision implies that an arbitrating party "cannot be 'represented' by counsel." Opp'n at 17-18. Nothing in the provision remotely hints that a party cannot be represented by counsel. The sentence at issue does not mention lawyers or counsel and states only that the parties waive the right to any arbitration that would "consolidate more than one person's claims" and waive the right "to participate in a class action lawsuit." *See id.* at 17; Tobias Decl. Ex. 5. Plaintiff cites no authority at all for the proposition that LN/TM's arbitration clause is "unenforceable" due to its purported failure to satisfy JAMS's standards. The Court should reject this argument and grant LN/TM's motion to compel arbitration.

## III. CONCLUSION

For the reasons stated above and in LN/TM's Motion to Compel Arbitration, the Court should grant LN/TM's motion and dismiss Plaintiff Terry-Bazer's claims.

//

//

Dated: August 19, 2020

Respectfully Submitted,

LATHAM & WATKINS LLP

By: /s/ Timothy L. O'Mara

Daniel M. Wall (Bar No. 102580)
*dan.wall@lw.com*
Timothy L. O'Mara (Bar No. 212731)
*tim.o'mara@lw.com*
Andrew Gass (Bar No. 259694)
*andrew.gass@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C., Live Nation Entertainment, Inc., and Live Nation Worldwide, Inc.*