1   David Azar (SBN 218319)
2   **MILLBERG PHILLIPS GROSSMAN LLP**
    16755 Von Karman Avenue, Suite 200
3   Irvine, CA 92606
    Tel: (212) 594-5300
4   dazar@milberg.com

5
    Alex R. Straus (SBN 321366)
6   **GREG COLEMAN LAW PC**
7   16748 McCormick Street
    Los Angeles, CA 91436
8   Tel: (917) 471-1894
    Fax: (865) 522-0049
9   alex@gregcolemanlaw.com
10
11  *Attorneys for the Plaintiffs*
    *additional attorneys appear in signature
12

13              **UNITED STATES DISTRICT COURT**
14               **CENTRAL DISTRICT OF CALIFORNIA**
                        **WESTERN DIVISION**
15

16  MATTHEW AJZENMAN; SUSAN TERRY-
    BAZER; BENNY WONG; ALEX CANELA,          Case No.: 2-20-cv-03643-DSF-JEM
17  JEREMY WOOLLEY; AMANDA
    WOOLLEY; ANNE BERGER; and                **PLAINTIFFS' RESPONSE IN
18  KRYSTAL MOYER, on behalf of              OPPOSITION TO MOTION TO
    themselves and all others who are similarly   DISMISS OR, IN THE
19  situated,                                ALTERNATIVE, TO COMPEL
                                             ARBITRATION, ON BEHALF
20                                           OF ATHLETICS INVESTMENT
                        Plaintiffs,          GROUP LLC AND SAN
21                                           FRANCISCO BASEBALL
                                             ASSOCIATES L.P.**
22      v.

23  OFFICE OF THE COMMISSIONER
24  OF BASEBALL, an unincorporated           Date:     October 5, 2020
    association doing business as MAJOR      Time:     1:30 pm
25  LEAGUE BASEBALL, ROBERT D.               Ctrm:     7D
    MANFRED, JR.; AZPB Limited               Judge:    Hon. Dale S. Fischer
26  Partnership; AZPB I, INC; ATLANTA
    NATIONAL LEAGUE BASEBALL                 Date
27  CLUB INC.; ATLANTA NATIONAL              Filed:    September 2, 2020
28  LEAGUE BASEBALL CLUB, LLC;

1   BALTIMORE ORIOLES LIMITED
2   PARTNERSHIP; BALTIMORE
    ORIOLES INC; BALTIMORE
3   BASEBALL CLUB INC.; BOSTON
    RED SOX BASEBALL CLUB LIMITED
4   PARTNERSHIP; FENWAY
5   SPORTS GROUP LLC; NEW
    ENGLAND SPORTS VENTURES,
6   LLC; CHICAGO CUBS BASEBALL
7   CLUB, LLC; CHICAGO WHITE SOX
    LTD.; CHISOX CORP.; THE
8   CINCINNATI REDS, LLC;
9   CLEVELAND INDIANS BASEBALL
    COMPANY LP; COLORADO
10  BASEBALL PARTNERSHIP;
11  COLORADO ROCKIES BASEBALL
    CLUB, LTD.; OLYMPIA
12  ENTERTAINMENT, INC.; DETROIT
13  TIGERS, INC.; CRANE CAPITAL
    GROUP; HOUSTON ASTROS INC.;
14  HOUSTON ASTROS LLC; KANSAS
15  CITY ROYALS BASEBALL CORP.;
    KANSAS CITY ROYALS
16  BASEBALL CLUB, INC.; ANGELS
17  BASEBALL LP; MORENO
    BASEBALL LP; GUGGENHEIM
18  BASEBALL MANAGEMENT LLC;
19  LOS ANGELES DODGERS, INC.;
    MIAMI MARLINS L.P.; MIAMI
20  MARLINS, INC.; MILWAUKEE
21  BREWERS BASEBALL CLUB, INC.;
    MILWAUKEE BREWERS
22  HOLDINGS LLC; MINNESOTA
23  TWINS, LLC; STERLING
    DOUBLEDAY ENTERPRISES LP;
24  METS PARTNERS INC.; NEW
25  YORK YANKEES PARTNERSHIP;
    YANKEE GLOBAL ENTERPRISES
26  LLC; ATHLETICS INVESTMENT
27  GROUP LLC.; PHILLIES LP;
    PITTSBURGH ASSOCIATES LP;
28  PITTSBURGH BASEBALL, INC.;

Trial
Date:    None yet set

1   PADRES, L.P.; SAN FRANCISCO
2   BASEBALL ASSOCIATES L.P.; THE
    BASEBALL CLUB OF SEATTLE
3   LLLP; BASEBALL OF SEATTLE
    INC.; ST. LOUIS CARDINALS LLC;
4   ST. LOUIS NATIONAL BASEBALL
5   CLUB INC.; TAMPA BAY DEVIL
    RAYS LTD.; RANGERS BASEBALL
6   EXPRESS LLC; ROGERS BLUE
7   JAYS BASEBALL PARTNERSHIP;
    TORONTO BLUE JAYS BASEBALL
8   LTD; WASHINGTON NATIONALS
9   BASEBALL CLUB LLC;
    TICKETMASTER LLC; LIVE
10  NATION WORLDWIDE, INC.; LIVE
11  NATION ENTERTAINMENT, INC.;
    STUBHUB, INC.; LAST MINUTE
12  TRANSACTIONS, INC.; and JOHN
13  DOE CORPORATIONS 1-75,

14                  Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **Table of Contents**

2

3

I.    INTRODUCTION ...................................................................................1

4

II.   STANDARD OF REVIEW ......................................................................1

5

III.  ARGUMENT............................................................................................2

6

    A.   This Court Has Subject-Matter Jurisdiction Over Plaintiff

7

        Wong's Claims. ............................................................................ 2

8

        1.   Plaintiff Wong's claims are not mooted because has not
             received the relief he could receive through litigation..................3

9

10

        2.   Plaintiff Wong, as a putative class representative, should
             still be afforded a fair opportunity to move for class
             certification on his claims. ...........................................................8

11

    B.   Defendants' Mandatory Arbitration Provisions Are Unenforceable. ........ 9

12

        1.   The Oakland Athletics' arbitration provision is invalid
             pursuant to California law. ..........................................................10

13

        2.   Both the San Francisco Giants' terms of use and its
             third-party ticket vendor's terms of use are unenforceable..........13

14

        3.   Plaintiff Wong did not know of Fevo's "Terms of Use" and
             thus was not on proper inquiry notice. .......................................15

15

16

        4.   Fevo's arbitration provisions are unconscionable and
             unenforceable. ............................................................................17

17

    C.   Plaintiffs, Including Plaintiff Wong, Have Sufficiently Pleaded
        Claims for Violations of the CLRA, UCL, as well as for Civil

18

        Conspiracy and Unjust Enrichment...........................................................20

19

        1.   Plaintiffs have sufficiently pleaded claims for violation
             of the CLRA ...............................................................................20

20

        2.   Plaintiffs' UCL claims, both those premised on CLRA

21

             violations and those under the unfair prong, are sufficiently

22

             pleaded. .....................................................................................25

23

IV.   LEAVE TO AMEND .............................................................................25

24

V.    CONCLUSION ......................................................................................25

25

26

27

28

1

## Table of Authorities

2

**Cases**                                                                    **Page(s)**

3

4   *Anderson v. SeaWorld Parks and Entertainment, Inc.*,
       No. 15-cv-02172-JSW, 2016 U.S. Dist. LEXIS 188044
5      (N.D. Cal. Nov. 7, 2016) .......................................................... 21, 22

6   *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669
       (Cal. 2000) ...................................................................... 17, 18
7

8   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)...................................... 10

9   *Biodiversity Legal Found. v. Badgley,* 309 F.3d 1166 (9th Cir. 2002) ................... 8
10

11  *Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ...................................... 23

12  *Cal. Ass'n of Psychology Providers v. Rank*, 793 P.2d 2 (1991)........................... 22

13  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ...................................... 3, 4
14

15  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) ........................ 17

16  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016) ........................... 6, 7, 8, 9

17  *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) .................................... 24
18

19  *Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ................................. 2

20  *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326 (1980) ......... 9

21
22  *Dishman v. UNUM Life Ins. Co. of America,* 269 F.3d 974 (9th Cir. 2001) .......... 5

23  *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486 (9th Cir. 1996) ......... 7

24  *Fairbanks v. Superior Court*, 205 P.3d 201 (Cal. 2009) ....................... 21
25

26  *Feldman v. Bomar,* 518 F.3d 637 (9th Cir. 2008) ............................. 3, 8

27  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .............. 2

28  *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal. App. 4th 846 (2001) .......... 18

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ...................... 8

*Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir. 1996) ...................................... 4

*Lomeli v. Midland Funding, LLC,* No. 19-CV01141-LHK,
    2019 U.S. Dist. LEXIS 166151 (N.D. Cal. Sept. 26, 2019) ...................... 15-16

*Lovig v. Best Buy Stores,* No. 18-cv-02807-PJH,
    2018 U.S. Dist. LEXIS 146473 (N.D. Cal. Aug. 28, 2018) ............................ 18

*McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019) .................... 12

*McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) ............................... 9, 10, 11, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)........... 2

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ...................... 19, 20

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .................... 16, 17

*Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ........... 15

*Orgain, Inc. v. N. Innovations Holding Corp.*, No. 18-cv-01253-JLS, 2018 U.S.
    Dist. LEXIS 223457 (C.D. Cal. Dec. 6, 2018) ........................................ 22-23

*Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659 (1993) ................ 18

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ........................... 18, 19, 20

*Roberts v. AT&T Mobility LLC,* No. 15-cv-03418-EMC,
    2018 U.S. Dist. LEXIS 42235 (N.D. Cal. Mar. 14, 2018) .............................. 11

*Roberts v. AT&T Mobility LLC*, 801 F. App'x 492 (9th Cir. 2020) ...................... 12

*Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC,
    2018 U.S. Dist. LEXIS 42235 (N.D. Cal. Mar. 14, 2018 ................................ 12

*Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922 (N.D. Cal. 2015) ......................... 16

*Smith v. H.F.D. No. 55, Inc.,* No. 2:15-cv-01293-KJM-KJN,
    2016 U.S. Dist. LEXIS 29748 (E.D. Cal. Mar. 8, 2016) .................................... 2

*Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184 (Cal. 2013) ....................... 17, 18

*Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006 (9th Cir. 2005) .................... 25

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .............................. 1-2

*Van v. LLR, Inc.*, 962 F.3d 1160 (9th Cir. 2020) ................................. 4-5

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................... 22

*Wilson v. Frito-Lay N. Am., Inc.,* No. 12-1586 SC,
    2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2013)................................... 23

*Zwickler v. Koota,* 389 U.S. 241 (1967)(1967) ....................................... 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................... 22

**Rules**

Fed. R. Civ. P. 56. ............................................................................ 15

Fed. R. Civ. P. 8 ...................................................................... 22, 23, 25

Fed. R. Civ. P. 9 ...................................................................... 22, 23, 25

Fed. R. Civ. P. 12 .......................................................................... 1, 2

Fed. R. Civ. P. 15 ........................................................................... 25

**Other**

13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    3533.2 (3d ed. 2015) .............................................................. 9

13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    3533.9.1 (3d ed. 2015) ............................................................ 9

## I.   INTRODUCTION

This case was brought by Plaintiffs Matthew Ajzenman, Susan Terry-Bazer, Benny Wong, Alex Canela, Jeremy Woolley, Amanda Woolley, Anne Berger, and Krystal Moyer (collectively, "Plaintiffs"), on behalf of themselves and all others who are similarly situated, against a group of defendants.  Defendant Athletics Investment Group LLC (the "Athletics") and Defendant San Francisco Baseball Associates L.P. (the "Giants") (collectively, "Defendants") seek dismissal of claims brought by Plaintiff Benny Wong ("Plaintiff Wong") only.  The operative complaint in this action is the Corrected Amended Class Action Complaint ("Complaint" or "Compl."), ECF No. 42-1.

To date, Defendants have refused to provide Plaintiff Wong the monetary relief, injunctive relief, or the declaratory relief sought by Plaintiffs. As a result, Plaintiffs, including Plaintiff Wong, have viable class action claims based on violations of the California Legal Remedies Act ("CLRA") and the California's Unfair Competition Law ("UCL"), as well as civil conspiracy and unjust enrichment claims, none which are subject to Defendants' unenforceable arbitration provisions.

## II.   STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), a court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions [], or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

89 (1998) (citation and quotation marks omitted).  In considering a motion pursuant to Rule 12(b)(6), a court must accept all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Federal substantive law governs questions concerning the interpretation and enforceability of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-24 (1983). However, courts are to apply state law contract principles "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability)[.]" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[C]lear and unmistakable evidence" is required for courts to hold that parties have agreed to arbitrate arbitrability. *Id*. (citations and quotations omitted). In resolving a motion to compel arbitration, "[t]he party opposing arbitration receives the benefit of any reasonable doubts … and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." S*mith v. H.F.D. No. 55, Inc.*, No. 2:15-cv-01293-KJM-KJN, 2016 U.S. Dist. LEXIS 29748, at *11-12 (E.D. Cal. Mar. 8, 2016) (citing Three *Valleys Mun. Water Dist. v. E.F. Hutton & Co*., 925 F.2d 1136, 1141 (9th Cir. 1991)).

## III.    ARGUMENT

### A.    This Court Has Subject-Matter Jurisdiction.

Defendants assert that Plaintiff Wong's claims should be dismissed as moot, based on refunds received which did not include interest payments, or disgorgement

of profits earned by Defendants from the use of Plaintiff's money.  Defendants have also made no attempt to address Plaintiffs' injunctive relief or declaratory judgement sought.  Defendants also base their attempted dismissal on inaccurate facts and law. Defendants mistakenly assert: "Even in the class-action context, a lawsuit—or an individual claim— becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation."  Mot. to Dismiss or, in the Alternative, to Compel Arbitration ("Defs.' Br."), at 20, ECF No. 78 (internal quotations omitted).  Defendants' contention is factually and legally incorrect in at least three ways: (1) Plaintiff Wong has not received either the monetary or equitable relief he could receive through litigation; (2) even if Defendants provided complete monetary relief on his individual claims—which they have not—Plaintiff Wong would still be able to seek class certification; and (3) Defendants have either misinterpreted or misrepresented relevant precedent on these issues.

### 1.    Plaintiff Wong's claims are not mooted because has not received the relief he could receive through litigation.

The Ninth Circuit has consistently held that "[t]he burden of demonstrating mootness is a heavy one." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Nw. Envtl. Def. Ctr. v. Gordon,* 849 F.2d 1241, 1244 (9th Cir. 1988)).  The mootness doctrine requires that a plaintiff have a "personal stake in the outcome of the lawsuit" throughout the litigation. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (citation omitted).  "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief what-ever to the prevailing party.

As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* A defendant cannot offer limited relief—something less than what the plaintiff claims for damages—in an effort to "pick off" a named plaintiff from representing a class of similarly situated consumers. *Id.* at 1147 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

Here, Plaintiff Wong has not received the monetary relief, injunctive relief, or declaratory judgement he could receive through litigation.  Thus, there is no basis to determine his claims are mooted or that the Court lacks subject-matter jurisdiction.[1]

> **a.**   *Plaintiff Wong has not received full monetary recovery because Defendants' attempted restitution did not include the pre-judgment and post-judgment interest, or disgorgement of profits.*

Plaintiff Wong has not received full monetary recovery because Defendants' attempted restitution did not include the "pre-judgment and post-judgment interest as allowed under California law" which Plaintiffs, including Plaintiff Wong, have sought.  Compl., at 49, ECF No. 42-1.   Defendants' attempted restitution also did not include the injunctive or declaratory relief sought.  *Id.*, ¶ 108.

As the Ninth Circuit has held, "prejudgment interest serves a compensatory function, designed to make the injured party whole." *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1441 (9th Cir. 1996); *see also Van v. LLR, Inc.*, 962 F.3d 1160, 1164-65 (9th Cir. 2020) (plaintiff's claim for loss of the use of money is actual, concrete, and

---

[1] For further discussion on mootness, see Section III.C. of Plaintiffs' contemporaneously filed Response in Opposition to Defendants' Motion to Dismiss Claims Against Office of the Commissioner for Lack of Jurisdiction, ECF No. 97.

particularized such that it creates a valid claim for damages).  The Ninth Circuit has further held that "prejudgment interest is an element of compensation, not a penalty." *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 988 (9th Cir. 2001).

Plaintiff Wong alleges that—through the purchase of tickets for MLB games, which have since been canceled or rescheduled for play without fans in attendance— Defendants have improperly deprived him of the use of his money, and have effectively taken interest free loans (using Plaintiffs' money) that have not yet been repaid.  *E.g.*, Compl., ¶ 1.  Plaintiff Wong's claims here are valid and cognizable. Defendants have conceded that they held Plaintiff Wong's money interest-free for months. The Athletics held Plaintiff Wong's money for *nine months* before offering him a monetary refund, but never paid him interest for that intervening period. Athletics Decl., ¶¶ 8-9, ECF No. 78-1. The Giants held Plaintiff Wong's money for *three months* before offering him a monetary refund, but never paid him interest for that intervening period. Giants Decl., ¶¶ 3, 23, ECF No. 78-3.

However, shortly after determining that games would not be played as scheduled with fans in attendance, Defendants could have immediately issued refunds, with interest, in an effort to limit the time that Plaintiff Wong and consumers were deprived of their money; but Defendants refused to do so.  As cases cited by Defendants hold, even where a refund is accepted, where interest is not included in the offered refund, the refund cannot moot the underlying claim, because those Plaintiffs and consumers have not "actually receive[d] *all* of the relief he or could

1
2

receive on the claim through further litigation." *Chen v. Allstate Ins. Co.*, 819 F.3d

1136, 1144 (9th Cir. 2016).

3
4

> **b.** *Plaintiff Wong has not received the injunctive relief sought and, therefore, his claims are not mooted.*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Plaintiffs, including Plaintiff Wong, have sought injunctive relief pursuant to

the CLRA and UCL including: a constructive trust (and the appointment of a trustee)

assigned to protect Plaintiffs' funds paid to Defendants for 2020 MLB tickets, as the

continued possession of these funds has caused Plaintiffs irreparable harm, and to

enjoin all Defendants from any continued sales of 2020 MLB tickets to avoid any

more harm; a public injunction including (i) providing full restitution to Class

members, (ii) enjoinment of Defendants from committing future violations of the

UCL, (iii) requiring Defendants to provide an accounting of all monies obtained for

2020 MLB tickets, (iv) requiring Defendants to give individualized notice to all Class

members of their rights and procedures for enforcing their rights with respect to

Defendants' violations of California law, and (v) a prohibition on Defendants' future

denials of refunds for 2020 MLB tickets.  Compl., ¶¶ 117, 125, 129.

21
22
23
24
25
26
27

The limited and insufficient monetary disbursement made to Plaintiff Wong,

after the initiation of litigation, does not address Plaintiffs' claims for injunctive

relief.  Even if Defendants provided full monetary relief to Plaintiff Wong (including

interest)—which they have not—such relief would not extend to the putative class

and could not moot Plaintiffs' injunctive relief claims.  As the Ninth Circuit has held:

28

1
2
3
4

> While injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled.*

5
6
7
8

*Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1501-02 (9th Cir. 1996) (citation omitted; emphasis in original) (quoting *Bresgal v. Brock,* 843 F.2d 1163, 1170-71 (9th Cir. 1987)).

9
10
11
12
13
14

Once again, the very precedent on which Defendants rely illustrate why this Court should deny their motion: the Ninth Circuit has held that injunctive relief claims, including class claims, are to be protected from dismissal based on a defendant's strategy to "pick off" an individual plaintiff. *See Chen*, 819 F.3d at 1142.

15
16

> **c.** *Plaintiff Wong has not received the declaratory judgment sought and, therefore, his claims are not mooted.*

17
18
19
20
21
22
23
24
25

The central question in regard to the issue of mootness of a declaratory judgment claim is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. Here, there has been no change in circumstances in regard to Plaintiff Wong's right to seek a declaratory judgment on the question whether Defendants' conduct to continue to deny full restitution to Plaintiffs and the putative class in the form of full refunds with interest for the sale of tickets for the 2020 MLB season is permissible.

26
27
28

The "test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief . . . is 'whether the facts alleged, under all the circumstances,

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS OR,
IN THE ALTERNATIVE, TO COMPEL ARBITRATION
No. 2-20-cv-03643-DSF-JEM

show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Biodiversity Legal Found. v. Badgley,* 309 F.3d 1166, 1174-75 (9th Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)); *see also*, *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129  (9th Cir. 2005);

Even if a case is moot with respect to injunctive relief, a court may invoke jurisdiction over a claim for declaratory relief.  *See*, *e.g.*, *Zwickler v. Koota,* 389 U.S. 241, 254 (1967); *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008).

**2.    Plaintiff Wong, as a putative class representative, should be afforded a fair opportunity to move for class certification.**

To reiterate, Defendants assert that Plaintiff Wong's claims should be dismissed as moot because: "Even in the class-action context, a lawsuit—or an individual claim—becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation."  Defs.' Br. 20. Defendants' contention is inaccurate.  Defendants cite to no cases which explain their mistaken legal analysis.  The Ninth Circuit in *Chen* held that:

> when a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.

819 F.3d at 1147.  This basic legal principle has been a long-standing holding of the Supreme Court as well.  "Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before

an affirmative ruling on class certification, obviously would frustrate the objectives

of class actions." *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S.

326, 339 (1980). As Defendants' cited case explains, these holdings are also

consistent with leading treatises on federal procedure:

> According to Wright & Miller, "[i]f the defendant is willing to consent to judgment on terms that embrace all the relief the plaintiff could win on the merits, the action may be found moot." 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.2 (3d ed. 2015). But "offers to provide full relief to the representative plaintiffs who wish to pursue a class action must be treated specially, lest defendants find an easy way to defeat class relief." *Id.; accord* 13C *id.* § 3533.9.1. "[A]pplying both the flexibility of Article III's requirements and the need to protect the interests of class members prior to certification, Article III mootness should not provide a vehicle for 'picking off' named plaintiffs or eliminating class treatment of claims until there has been a reasonable opportunity to present the issue of class certification to the court." *Moore's Federal Practice, supra*, § 23.64[1][b]. *"[W]hen a named plaintiff has requested class certification and class relief in its complaint, but has not yet had a reasonable opportunity to file a motion seeking class certification, an offer of individual relief should not be considered to be a tender of all relief requested in the complaint." Id.*

*Chen*, 819 F.3d at 1147-48 (emphasis added).

In short, this Court should not dismiss Plaintiff Wong's claims even if it finds

complete relief has been provided on his individual claims. Rather, Plaintiff Wong

first should be given a fair opportunity to move for class certification on those claims.

## B. Defendants' Mandatory Arbitration Provisions Are Unenforceable.

Pursuant to *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), and its progeny,

the arbitration provisions relevant to both Defendant Athletics' and Defendant

Giants' ticket sales are unenforceable as a result of their improper attempts to preclude Plaintiff Wong from seeking public injunctive relief.

### 1. The Athletics' arbitration provision is invalid pursuant to California law.

The Athletics seek to strip this Court of its authority to preside over Plaintiffs' claims by ignoring controlling precedent invalidating its arbitration clause based on its attempt to impermissibly preclude public injunctive relief.

The California Supreme Court has held that an arbitration provision which purports to preclude public injunctive relief is invalid:

> Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement … By definition, the public injunctive relief available under the CLRA … is primarily for the benefit of the general public. Its evident purpose … is to remedy a public wrong, not to resolve a private dispute, and any benefit to the plaintiff requesting such relief likely … would be incidental to the general public benefit of enjoining such a practice. Accordingly, the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive [the plaintiff's] right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law.

*McGill*, 393 P.3d at 93-94 (citations and quotations omitted) ("*McGill* Rule").

Having established the *McGill* Rule, the California Supreme Court then held that its new rule was not preempted by the FAA pursuant to *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Noting that *Concepcion* requires courts to place arbitration agreements on equal footing with other contracts, *McGill* held that an arbitration agreement cannot be invalidated by a state law contract defense that applies only to arbitration:

> The contract defense at issue here—"a law established for a public reason cannot be contravened by a private agreement"—*is* a generally applicable contract defense, i.e., it is a ground under California law for revoking any contract.

*McGill*, 393 P.3d at 94-95 (citations omitted)

Pursuant to *McGill*, this Court should deny the Athletics' motion because: (1) Plaintiffs specifically seek public injunctive relief pursuant to the CLRA and UCL designed to protect the general public in California from the threat posed by the Athletics' misconduct; and (2) the Athletics' arbitration provision violates the rule established by the California Supreme Court in *McGill*, 393 P.3d at 93-94.

        **a.**    *The Athletics' arbitration provision purports to preclude public injunctive relief.*

The *McGill* Rule states that any contract, including an arbitration agreement, "that waives the right to seek the statutory remedy of public injunctive relief . . . in any forum is contrary to California public policy and therefore unenforceable." *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC, 2018 U.S. Dist. LEXIS 42235, at *5 (N.D. Cal. Mar. 14, 2018), aff'd *Roberts v. AT&T Mobility LLC*, 801 F. App'x 492 (9th Cir. 2020) (citing *McGill*, 393 P.3d 85).

Public injunctive relief is "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 393 P.3d at 87. Pursuant to *McGill*, an arbitration provision is unenforceable when it purports to waive the plaintiff's right to request public injunctive relief. Here, consistent with *McGill*, Defendants' arbitration provision attempts to preclude public injunctive relief: "ALL DISPUTES SHALL BE ARBITRATED ON AN

INDIVIDUAL BASIS, AND NOT AS A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING.   The arbitrator(s) may not consolidate the claims of multiple parties." Athletics Decl., Ex. A, at 4, ECF No. 78-2 ("Athletics' Membership Agreement").

The enforceability of the Athletics' arbitration clause is a threshold question that should be addressed first. It cannot be disputed that Plaintiffs explicitly seek public injunctive relief pursuant to the CLRA and UCL. Compl., ¶¶ 117, 125, 129.

> **b.**   *California law makes the bar on public injunctive relief unenforceable.*

Because the Athletics' arbitration provision purports to bar public injunctive relief, it is unenforceable rendering the rest of the Athletics' arbitration provision null and void. *McGill*, 393 P.3d at 93-94. The *Roberts* court held that the unenforceable arbitration provision could not be severed to preserve the rest of the arbitration provision. *Roberts*, 2018 U.S. Dist. LEXIS 42235, at *27-28.   On appeal, the Ninth Circuit agreed that a bar on public injunctive relief invalidates the arbitration agreement and leaves it unenforceable. *Roberts*, 801 F. App'x 492, 496; *see also McArdle v. AT&T Mobility LLC*, 772 F. App'x 575, 575 (9th Cir. 2019) (noting that a bar on public injunctive relief "plainly invalidates the entire arbitration agreement").   As a result, if the Athletics' arbitration provision is null and void in its entirety, Plaintiff Wong is not bound by any of its terms and is free to bring all his claims in this Court.

**2.      Both the Giants' terms of use and its third-party ticket vendor's terms of use are unenforceable.**

The Giants concede that the tickets at issue, purchased by Plaintiff Wong, were sold through a third-party ticket vendor, Fevo, Inc. ("Fevo").   Defs.' Br. 18. According to the Giants, when Plaintiff Wong clicked "Buy Tickets" on the Giants' website, a "pop-up" window opened which covered up and "greyed out" the Giants' website.  Giants Decl., ¶ 7, ECF No. 78-3.  Upon information and belief, from the moment Plaintiff Wong clicked "Buy Tickets" until the completion of a ticket purchase transaction, he never had cause to return to the Giants' website.

Nonetheless, without citing to a single case, the Giants contend that consumers who purchased tickets exclusively through a third-party ticket sellers' website are somehow bound by *not only* the third-party ticket sellers' click-wrap arbitration agreement, but are *also* bound by the Giants' conflicting click-wrap arbitration agreement—which they could not even review when completing their purchase. Giants Decl., ¶ 15 ("[A]ny user that agrees to the Fevo Terms when purchasing tickets to a Giants game also agrees to be subject to the terms applicable to SFGiants.com."). The Giants do not, and cannot, cite to a single case enforcing terms accessible through a click-wrap agreement that leads to a webpage with a nondescript link to another webpage which has an unenforceable browse-wrap link.  This is a preposterous and wholly unsupported contention.

The Giants make a half-hearted attempt to explain how a consumer purchasing through Fevo's website is bound by terms found two webpages away when the

-13-

consumer has no instructions or cause to proceed to either:

> Users have two options for accessing the "terms applicable to" SFGiants.com from the Fevo confirmation window. First, the Fevo confirmation window provides a blue, underlined hyperlink to the "sfgiants.com" homepage within the sentence "In connection with your purchase you will receive ticket related commercial emails from SFGiants.com." Second, the user can close the Fevo pop-up window by clicking the "X" in the top right corner of the window. Clicking that "X" restores the SFGiants.com/special events page, which remained visible beneath the pop-up window.

Giants Decl., ¶ 16. First and foremost, neither the information provided on Fevo's website regarding the Giants' website ("In connection with your purchase you will receive ticket related commercial emails from SFGiants.com.") nor the link identified (SFGiants.com) provides any indication that there are "Terms of Use" or binding contract provision to be accessed through that link, much less a mandatory arbitration agreement waiving all right to seek redress in a court of law. Second, and perhaps most egregious, even if a consumer clicked on the generic SFGiants.com link, that still does not direct the consumer to a "Terms of Use" page or any other contract-related information. Instead, clicking on the generic SFGiants.com link merely brings the consumer to the team's opening webpage, at which point the consumer would have to scroll down past more than 200 clickable links, videos, advertisements, and promotions before having to click an "X" to clear the cookies disclaimer blocking the miniscule "Terms of Use" link at the bottom-most location on the entire homepage. That "Terms of Use" link is further obscured in the smallest font on the page, in a greyed-out light grey color on top of a darker grey backdrop, it is not

bolded, it is not underlined, and it is not differentiated in any other way whatsoever. In short, the "Terms of Use" is entirely inconspicuous. To suggest that a consumer, such as Plaintiff Wong, who did not embark on this series of voluntary, unsolicited steps—or alternatively "click[] the 'X' in the top right corner of the [Fevo] window" before even starting the process (something he was *not* instructed to do)—would nevertheless be bound to mandatory contract terms forfeiting significant legal rights is nonsensical and unsupportable. To be clear, Defendants' motion also does not discuss how a consumer would distinguish between the myriad conflicting contract provisions in the Fevo "Terms of Use" agreement and the Giants "Terms of Use" agreement, which Defendants now insist are both *simultaneously* binding.

The only thing clear about the Giants' attempt to bind Plaintiff Wong to its hidden and conflicting contract terms is its motivation: The Giants want its contract terms to apply because the Fevo contract terms are so thoroughly unenforceable. This position, however, is unsupportable under the law.

### 3.   Plaintiff Wong did not know of Fevo's "Terms of Use" and thus was not on proper inquiry notice.

The burden rests on the Giants to prove the existence of an "agreement to arbitrate by the preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). The standard is evidentiary: "[i]n determining the existence and validity of an agreement to arbitrate, 'a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56.'" *Lomeli v. Midland Funding, LLC*, No. 19-CV01141-LHK, 2019 U.S. Dist. LEXIS 166151,

at *9 (N.D. Cal. Sept. 26, 2019) (internal citation omitted).

Issues about the formation of contracts on the internet are decided by age-old contract rules: "[i]n determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014) (internal citation and quotation marks omitted). As with any contract, the Giants must prove that Plaintiff Wong affirmatively accepted Fevo's offer to enter into the "Terms of Use". The Giants do not argue that Plaintiff Wong accepted Fevo's "Terms of Use" because he clicked on the terms, read them, and actually agreed to them. Because he did not.

To begin, courts will not honor online agreements if the hyperlinked text leading to the agreement is not conspicuous—a determination that looks to the font, color, underlining, relative size of the hyperlinked terms to other text and links on the page, and any other common sense factors bearing on whether consumers are likely to see it. *See Barbanell v. One Med. Grp.*, 2019 Cal. Super. LEXIS 1411, at *10-11 (Cal. Super. Ct. Apr. 3, 2019). The analysis of whether the Fevo link is conspicuous requires examination of the actual page reviewed by Plaintiff Wong, and "[t]his is a highly fact-specific inquiry that looks to 'the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design.'" *Rodman v. Safeway Inc*., 125 F. Supp. 3d 922, 945 (N.D. Cal. 2015) (citation omitted).

The Ninth Circuit has held that including a conspicuous "terms of use"

hyperlink on a webpage, even if placed adjacent to an action button ("signing," for example), will not suffice without a prompt to consumers to take an action demonstrating their acceptance of the terms:

> [W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.

*Nguyen*, 763 F.3d at 1178-79.

There is no evidence that the Fevo "Terms of Use," or the manner in which they are presented as a pop-up prompt on the Giants' webpage, meet the requirements under *Nguyen*. This burden rests on the Giants, and they have failed to meet it.

### 4.   Fevo's arbitration provisions are unconscionable and unenforceable.

Under California law, "the doctrine of unconscionability has both a procedural and substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 194 (Cal. 2013). Both procedural and substantive unconscionability are required to render a contract unenforceable, but they need not be present in the same degree. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). "California law utilizes a sliding scale to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citation omitted). Whether a contract or

1    provision is unconscionable is a question of law. *Flores v. Transamerica HomeFirst,*

2    *Inc.*, 93 Cal. App. 4th 846, 851 (2001). The core concern of the unconscionability

3    doctrine—procedural and substantive—is the absence of meaningful choice on the

4    part of one of the parties together with contract terms which are unreasonably

5    favorable to the other party. *Sonic-Calabasas A, Inc.*, 311 P.3d at 202.

6

7               **a.**    *The arbitration provisions are procedurally unconscionable,*

8                           *take-it-or-leave-it contracts of adhesion.*

9            Procedural unconscionability focuses on "oppression" and "surprise," and the

10   presence of either renders a contract procedurally unconscionable. *Patterson v. ITT*

11   *Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993). The primary inquiry is

12   whether the contract is one of adhesion. *Id*. Here, the contract containing the

13   arbitration provisions are undeniably contracts of adhesion, which the California

14   Supreme Court defines as "a standardized contract, which, imposed and drafted by

15   the party of superior bargaining strength, relegates to the subscribing party only the

16   opportunity to adhere to the contract or reject it." *Armendariz*, 6 P.3d at 689. This,

17   on its own, renders Fevo's arbitration provisions procedurally unconscionable.

18   *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010). The arbitration provision

19   is also oppressive because of Fevo's and the Giants' far superior bargaining power.

20   *Lovig v. Best Buy Stores*, No. 18-cv-02807-PJH, 2018 U.S. Dist. LEXIS 146473, at

21   *20 (N.D. Cal. Aug. 28, 2018). For example, the Giants are a multimillion-dollar

22

23   corporation with a sophisticated legal team—both in-house and on retainer—revising

24   their "Terms of Use" over the course of decades. By contrast, Plaintiff Wong is an

25

26

27

28

individual consumer. His choice—had he actually been put on notice—would have been to accept all of Fevo's and/or the Giants' terms without revision, or else be excluded from purchasing his tickets and attending the selected game.

**b.**     *Fevo's arbitration provisions are substantively unconscionable.*

Substantive unconscionability exists where there is a "lack of mutuality," meaning that "the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserve[s] for itself the ability to seek redress in either an arbitral or judicial forum." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006); *Pokorny*, 601 F.3d at 997 ("[R]equiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive unconscionability under California law.") Fevo's arbitration provision requires the arbitration of all claims against Fevo, but simultaneously allows Fevo to litigate its claims in court. Thus, the contract lacks mutuality. Similar arbitration provisions have been found to be unconscionable because excluding intellectual property rights claims from arbitration unfairly favored an employer as "it is far more often the case that employers, not employees, will file such claims. Furthermore, the [arbitration clause], while not an exclusive list, only includes the types of complaints that are predominately, if not solely, of concern to employees." *Id*. at 725. Given this asymmetry, the arbitration provision was "unfairly one-sided because it compels arbitration of the claims more likely to be brought by Fitz, the weaker party, but

exempts from arbitration the types of claims that are more likely to be brought by NCR, the stronger party." *Id*. This same reasoning applies to Fevo's "Terms of Use."

       **c.**      *Fevo's arbitration clause is permeated with unconscionability.*

Under California's sliding scale test for unconscionability, the evidence of procedural unconscionability need only be "slight" where the evidence of substantive unconscionability is strong. *Nagrampa*, 469 F.3d at 1293. Here, there is substantial evidence of both procedural and substantive unconscionability. It is undisputed that the arbitration agreement is adhesive. Because the arbitration agreement was imposed on Plaintiff Wong without any opportunity to negotiate its terms, it is highly oppressive. Moreover, a high degree of surprise existed because the Giants and Fevo provided no notice that the Terms of Use contained an arbitration clause which was located at the end of a lengthy and densely-worded agreement. The amount of procedural unconscionability is more than "slight." In addition, Fevo has retained the right to unilaterally modify the terms without notice. These factors amply provide reasons that this Court should find Fevo's arbitration provision unconscionable.

**C.**    **Plaintiffs Have Sufficiently Pleaded Claims for Violations of the CLRA, UCL, Civil Conspiracy and Unjust Enrichment.**

    **1.**    **Plaintiffs have sufficiently pled CLRA claims.**

Defendants contend that the Plaintiffs' claims must fail because the CLRA only applies to transactions for the sale or lease of consumer "goods" or "services" as those terms are defined by the act. Defs.' Br. 32. However, Defendants all but disregard the most relevant case by placing it as an afterthought in a footnote. In

*Anderson v. SeaWorld Parks and Entertainment, Inc.*, the court held that "there is no language in the pertinent portions of the CLRA [] that might lead to a conclusion that the legislature did not intend the CLRA to cover 'entertainment' or 'education' as "services.'" No. 15-cv-02172-JSW, 2016 U.S. Dist. LEXIS 188044, at *33, (N.D. Cal. Nov. 7, 2016). Here, it cannot be denied that professional baseball games would qualify as "entertainment."

Defendants further obscure the issue by stating that: "As Plaintiffs themselves acknowledge, a baseball ticket is not a "tangible chattel" but is instead an intangible, revocable "license[]" to attend a game." Defs.' Br. 33. In fact, Plaintiffs alleged:

> Defendants' conduct falls within the meaning of this statute because they caused transactions resulting in the sale or lease of goods or services to consumers – namely, the sale of personal seat licenses to MLB games (a.k.a. tickets).

Compl., ¶ 112. Defendants also argue that the CLRA's legislative history indicates that it was not intended to cover transactions involving entertainment or recreation. However, *Anderson* dispels this notion as well, disagreeing with *Fairbanks v. Superior Court*, 205 P.3d 201, 206 (Cal. 2009), in which the California Supreme Court had decided that life insurance was neither a "good" nor a "service" under the CLRA. *Anderson*, 2016 U.S. Dist. LEXIS 188044, at *29 ("As is evident, the *Fairbanks* court neither expressly addressed nor analyzed the phrase 'services for other than a commercial or business use.'"). The *Anderson* court continued: "[t]he Court 'must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner than renders other provisions in the

-21-

same statute inconsistent, meaningless, or superfluous.'" *Id*. (quoting *Boise Cascade Corp. v. U.S. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991)); *see also Cal. Ass'n of Psychology Providers v. Rank*, 793 P.2d 2, 6 (1991). The *Anderson* court ultimately ruled that "the term 'services' encompasses the 'educational and entertainment services' [that plaintiff] alleges she purchased from SeaWorld." *Anderson*, 2016 U.S. Dist. LEXIS 188044, at *33. Consistent with *Anderson*'s reasoning, MLB tickets purchased by Class members constitute "goods" and "services" under the CLRA.

> **a.** *Plaintiffs have pleaded their CLRA claim with particularity and adequately pleaded reliance.*

Defendants are wrong to assert that the Complaint "sounds in fraud" and thus necessarily invokes the heightened pleading scrutiny of Rule 9(b). Plaintiffs have not pleaded fraud; thus, Rule 9(b) does not apply. The Ninth Circuit has specifically recognized, in line with other Circuits, that "in a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). This includes CLRA and UCL claims. For instance, courts have ruled that Cal. Bus. & Prof. Code § 17200 claims do not include fraud as "an essential element," meaning "Plaintiff may plead either fraudulent business acts or unfair practices to state a claim . . . . [i]t is clear from the Complaint that Plaintiff has taken the latter course, so '[t]o the extent that [Plaintiff] does not aver fraud, [] his allegations need not satisfy Rule 9(b)." *Orgain*,

*Inc. v. N. Innovations Holding Corp.*, 8:18-cv-01253-JLS, 2018 U.S. Dist. LEXIS 223457, at *15-16 (C.D. Cal. Dec. 6, 2018) (citing *Vess*, 317 F.3d at 1105); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 Us. Dist. LEXIS 47126, at *13 (N.D. Cal. Apr. 1, 2013) ("[T]he rule is that plaintiffs need not satisfy Rule 9(b) as to the UCL's unlawful prong when the basis of their claim does not sound in fraud.).

As in *Orgain, Inc.*, Plaintiffs herein plead the UCL claim as "unfair," but not necessarily fraudulent. Compl., ¶ 120. Additionally, fraud is not an essential element of any of the claims alleged in the Complaint; indeed, the Complaint does not contain the word "fraud" (or any derivative thereof). Even in cases in which pleadings use the word 'fraud' or 'fraudulent,' courts do not automatically deem the entire pleading to "sound in fraud," and do not apply Rule 9(b) to all claims. *E.g.*, *Orgain, Inc.*, 2018 U.S. Dist. LEXIS 223457, at *15-16. Because Plaintiffs' claims do not sound in fraud the Complaint satisfies Rule 8(a), Defendants' motion to dismiss should be denied.

In any event, assuming for the sake of argument that Rule 9(b) did apply to some or all of the claims in the Complaint, Defendants' motion to dismiss should still be denied because the Complaint's allegations are sufficient to satisfy those heightened pleading standards. Rule 9(b) mandates that allegations "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny" any wrongdoing. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Fraud allegations must include the "who, what, when,

where, and how" of the claimed bad conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The Complaint's allegations adequately meet this pleading standard. For instance, the Complaint identifies "who" conducted and was involved in the alleged fraudulent misconduct (Defendants); "what" constituted the wrong (refusal to timely refund monies paid for tickets purchased and refusal to include interest covering the period of delay), Compl., ¶¶ 16, 83; "when" the wrong occurred (commencing just prior to the rise of the COVID-19 pandemic up to and including the time period when the MLB 2020 regular season was set to occur as initially scheduled, and continuing to the present), *id.*, ¶¶ 79-82; to the extent applicable in this case, "where" the wrong was carried out (in California and nationwide), *id.*, ¶ 8; and "how" the misconduct occurred (through Defendants' coordinated cancelation and rescheduling of games and their refusal to and/or delay in issuing refunds, based on the fictional "postponement" of games), *id.*, ¶¶ 2, 96.

In addition, contrary to the Defendants' conclusory and incorrect argument that "Plaintiffs have not alleged that they relied on any purported misrepresentations," Defs.' Br. 35, Plaintiffs clearly allege that they and other Class members were deceived by Defendants' scheme and conduct in acting and persisting in statements that ticket purchasers would continue to be entitled to full refunds, with interest, when in fact Defendants had no intention of providing—or at least knew at the time that in all likelihood they would not provide—such full refunds them in the event of the public health and economic crisis actively unfolding—which ultimately necessitated

the cancelation and rescheduling of MLB games. *See*, *e.g.*, Compl., ¶ 124.

> **2.    Plaintiffs' UCL claims, both those premised on CLRA violations and those under the unfair prong, are sufficiently pleaded.**

Defendants' rely on a circular contention that because Defendants think Plaintiffs' CLRA claims are insufficiently pleaded, this necessarily means Plaintiffs' UCL claims under the unlawful and unfair prongs must fail.  However, as discussed above, Defendants incorrectly demand the Court apply the incorrect standard to Plaintiffs' claims. *See supra* Section IV.C.1.a. However, the heightened standard of Rule 9(b) does *not* apply to Plaintiffs' CLRA claims; rather, the more relaxed standard under Rule 8(a) applies here.  Further, even if the heightened Rule 9(b) standard were to apply, Plaintiffs have sufficiently pleaded their claims regardless.  Thus, Plaintiffs have sufficiently pleaded their CLRA and, by extension, have sufficiently pleaded their UCL claims under the unlawful and unfair prongs.

## IV.    LEAVE TO AMEND

In the event Defendants' motion is granted in any respect, Plaintiffs respectfully request leave to amend, or permission to move for such leave under Rule 15(a)(2), which provides for leave to be "freely given when justice so requires." *See*, *e.g.*, *Sparling v. Daou* (*In re Daou Sys.*), 411 F.3d 1006, 1013 (9th Cir. 2005).

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court Deny Defendants' Motion in its entirety.

DATED: September 2, 2020      Respectfully submitted,

/s/ *Alex R. Straus*
Alex R. Straus (SBN 321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
Tel: (917) 471-1894
Fax: (865) 522-0049
alex@gregcolemanlaw.com

William A. Ladnier (SBN 330334)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
will@gregcolemanlaw.com

David Azar (SBN 218319)
**MILBERG PHILLIPS GROSSMAN LLP**
16755 Von Karman Avenue, Suite 200
Irvine, CA 92606
Tel: (212) 594-5300
dazar@milberg.com

Marc Grossman (admitted *pro hac vice*)
Peggy J. Wedgworth (admitted *pro hac vice*)
Andrei V. Rado (admitted *pro hac vice*)
Blake Yagman (admitted *pro hac vice*)
Michael A. Acciavatti (admitted *pro hac vice*)
**MILBERG PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Tel: (212) 594-5300
mgrossman@milberg.com
apwedgworth@milberg.com
rado@milberg.com
byagman@milberg.com
macciavatti@milberg.com

*Attorneys for Plaintiffs*

1
2

# **CERTIFICATE OF SERVICE**

3
4

The undersigned certifies that on this 2nd day of September, a copy of

5

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO

6
7

DISMISS CLAIMS AGAINST OFFICE OF THE COMMISSIONER *ET AL.* OR, IN

8

THE ALTERNATIVE, TO COMPEL ARBITRATION ON BEHALF OF

9

ATHLETICS INVESTMENT GROUP LLC AND SAN FRANCISCO BASEBALL

10
11

ASSOCIATES L.P. was filed electronically with the Clerk of Court using the

12

CM/ECF system which will send notification of the filing to all counsel of record.

13
14
15

/s/ *Alex R. Straus*
Alex R. Straus

16
17
18
19
20
21
22
23
24
25
26
27
28