David Azar (SBN 218319)
**MILBERG PHILLIPS GROSSMAN LLP**
16755 Von Karman Avenue, Suite 200
Irvine, CA 92606
Tel: (212) 594-5300
dazar@milberg.com

Alex R. Straus (SBN 321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
Tel: (917) 471-1894
Fax: (865) 522-0049
alex@gregcolemanlaw.com

*Attorneys for the Plaintiffs*
*additional attorneys appear in signature

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

MATTHEW AJZENMAN; SUSAN TERRY-BAZER; BENNY WONG; ALEX CANELA, JEREMY WOOLLEY; AMANDA WOOLLEY; ANNE BERGER; and KRYSTAL MOYER, on behalf of themselves and all others who are similarly situated,

Plaintiffs,

v.

OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL, ROBERT D. MANFRED, JR.; AZPB Limited Partnership; AZPB I, INC; ATLANTA NATIONAL LEAGUE BASEBALL CLUB INC.; ATLANTA NATIONAL LEAGUE BASEBALL CLUB, LLC;

Case No.: 2:20-cv-03643-DSF-JEM

**CORRECTED PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLAIMS AGAINST OFFICE OF THE COMMISSIONER *ET AL.* FOR LACK OF JURISDICTION**

Date:      October 5, 2020
Time:      1:30 pm
Ctrm:      7D
Judge:     Hon. Dale S. Fischer

Date
Filed:     September 2, 2020

1   BALTIMORE ORIOLES LIMITED
    PARTNERSHIP; BALTIMORE
2   ORIOLES INC; BALTIMORE
    BASEBALL CLUB INC.; BOSTON
3   RED SOX BASEBALL CLUB LIMITED
4   PARTNERSHIP; FENWAY
    SPORTS GROUP LLC; NEW
5   ENGLAND SPORTS VENTURES,
6   LLC; CHICAGO CUBS BASEBALL
    CLUB, LLC; CHICAGO WHITE SOX
7   LTD.; CHISOX CORP.; THE
8   CINCINNATI REDS, LLC;
    CLEVELAND INDIANS BASEBALL
9   COMPANY LP; COLORADO
10  BASEBALL PARTNERSHIP;
    COLORADO ROCKIES BASEBALL
11  CLUB, LTD.; OLYMPIA
12  ENTERTAINMENT, INC.; DETROIT
    TIGERS, INC.; CRANE CAPITAL
13  GROUP; HOUSTON ASTROS INC.;
14  HOUSTON ASTROS LLC; KANSAS
    CITY ROYALS BASEBALL CORP.;
15  KANSAS CITY ROYALS
16  BASEBALL CLUB, INC.; ANGELS
    BASEBALL LP; MORENO
17  BASEBALL LP; GUGGENHEIM
18  BASEBALL MANAGEMENT LLC;
    LOS ANGELES DODGERS, INC.;
19  MIAMI MARLINS L.P.; MIAMI
20  MARLINS, INC.; MILWAUKEE
    BREWERS BASEBALL CLUB, INC.;
21  MILWAUKEE BREWERS
22  HOLDINGS LLC; MINNESOTA
    TWINS, LLC; STERLING
23  DOUBLEDAY ENTERPRISES LP;
24  METS PARTNERS INC.; NEW
    YORK YANKEES PARTNERSHIP;
25  YANKEE GLOBAL ENTERPRISES
26  LLC; ATHLETICS INVESTMENT
    GROUP LLC.; PHILLIES LP;
27  PITTSBURGH ASSOCIATES LP;
28  PITTSBURGH BASEBALL, INC.;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PADRES, L.P.; SAN FRANCISCO
BASEBALL ASSOCIATES L.P.; THE
BASEBALL CLUB OF SEATTLE
LLLP; BASEBALL OF SEATTLE
INC.; ST. LOUIS CARDINALS LLC;
ST. LOUIS NATIONAL BASEBALL
CLUB INC.; TAMPA BAY DEVIL
RAYS LTD.; RANGERS BASEBALL
EXPRESS LLC; ROGERS BLUE
JAYS BASEBALL PARTNERSHIP;
TORONTO BLUE JAYS BASEBALL
LTD; WASHINGTON NATIONALS
BASEBALL CLUB LLC;
TICKETMASTER LLC; LIVE
NATION WORLDWIDE, INC.; LIVE
NATION ENTERTAINMENT, INC.;
STUBHUB, INC.; LAST MINUTE
TRANSACTIONS, INC.; and JOHN
DOE CORPORATIONS 1-75,

                  Defendants.

## **Table of Contents**

I.      INTRODUCTION ....................................................................................... 1

II.     BACKGROUND ......................................................................................... 1

III.    ARGUMENT ............................................................................................... 4

    A.   This Court Can Exercise Personal Jurisdiction Over Defendants,
       and Thus Plaintiffs' Claims Against Defendants Should Not Be
       Dismissed. .......................................................................................... 4

       1.   The MLB club defendants located outside of California are
          subject to specific jurisdiction in this Court. ............................... 5

          a.   *The MLB clubs have both purposefully availed themselves
             of California law by having played and continuing to play
             into the future baseball games in California.* .............................. 6

          b.   *Plaintiffs' claims against the MLB clubs arise directly out
             of their California-related activities and their transactions
             with Plaintiffs.* ........................................................................... 7

          c.   *This Court's exercise of specific jurisdiction against the
             MLB clubs is reasonable.* .......................................................... 8

    B.   Plaintiffs Have Standing as to All Defendants Due to Defendants'
       Participation in a Conspiracy to Refuse Refunds. ..................................... 9

    C.   Plaintiffs' Claims Are Not Moot. ............................................................. 12

IV.     LEAVE TO AMEND ................................................................................ 18

V.      CONCLUSION ......................................................................................... 18

# Table of Authorities

**Cases**                                                  **Page(s)**

*Allen v. Wright*, 468 U.S. 737 (1984)(1984) ............................................................ 9

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) .................................... 12, 13

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) ......................................... 9

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016) .............................. *passim*

*Cisco Sys., Inc. v. STMicroelectronics*, No. C-14-03236-RMW,
     2015 U.S. Dist. LEXIS 71958 (N.D. Cal. June 2, 2015) ................................. 11

*Cont'l Auto. Sys. v. Avanci, LLC*, No. 19-CV-02520-LHK,
     2019 U.S. Dist. LEXIS 214608 (N.D. Cal. Dec. 11, 2019) ............................... 8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)(1945) ..................................... 5

*Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009) .............. 9, 10

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017) ................................. 6, 8

*Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC*,
     933 F.3d 1136 (9th Cir. 2019) ........................................................................... 11

*Payne v. Office of the Comm'r of Baseball*, No. 15-cv-03229,
     2016 U.S. Dist. LEXIS 47971 (N.D. Cal. Apr. 8, 2016) .............................. 6, 7

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011.) ............................... 17

*Presidential Life Ins. Co. v. Milken*, 946 F. Supp. 267 (S.D.N.Y. 1996) .............. 10

*Rogers v. Lyft, Inc.*, No. 20-cv-01938-VC, 2020 U.S. Dist. LEXIS 61169
     (N.D. Cal. Apr. 7, 2020)..................................................................................... 2

*Schneider v. Chertoff*, 450 F.3d 944 (9th Cir. 2006) ............................................... 9

*Shahar v. Hotwire, Inc.*, No. C 12-06027 JSW,
     2013 U.S. Dist. LEXIS 202256 (N.D. Cal. Apr. 15, 2013) .............................. 10

*Sparling v. Daou* (In re Daou Sys.), 411 F.3d 1006 (9th Cir. 2005) ..................... 18

*Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) ................ 5

*United States Constitution. Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
      557 F.2d 1280 (9th Cir. 1977) ............................................................... 5

*Van v. LLR, Inc.*, 962 F.3d 1160 (9th Cir. 2020) ................................... 14

*Ziegler v. Indian River Cnty.*, 64 F.3d 470 (9th Cir. 1995) ................................ 4-5

**Statutes**

Cal. Civ. Proc. Code § 410.10 .................................................................. 5

**Rules**

Fed. R. Civ. P. 12 ..................................................................................... 5

Fed. R. Civ. P. 15 ..................................................................................... 18

## I.   INTRODUCTION

The public health crisis caused by Novel Coronavirus Disease ("COVID-19") has caused unprecedented economic and social hardship. At the time of this writing, there are over 5.72 million cases of COVID-19 infections and over 177,000 deaths in the United States.[1] By the end of August 1, over 28 million people claimed unemployment benefits.[2] Despite the unprecedented strain the pandemic has placed on the economy, many businesses continue to act lawfully and ethically by providing customers refunds for events that will not take place due to public health mandates. However, one glaring exception to this practice has been baseball. Class Members enthusiastically purchased tickets in anticipation of the 2020 MLB season. However, when the true depth of the pandemic became clear, it was clear that it would be impossible to play a standard 162-game season with fans in attendance. Instead of acknowledging this reality and promptly issuing refunds to all customers immediately, Defendants have refused to do so under the pretext that they are merely "postponing" the season. As a result of this conduct, Class Members are being forced to shoulder Defendants' financial burden for the foreseeable future.

## II.   BACKGROUND

Baseball Defendants' motion to dismiss is directed at the Plaintiffs that

---

[1] *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times (Aug. 24, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed Aug. 31, 2020).
[2] *Unemployment Insurance Weekly Claims*, Department of Labor (August 20, 2020), https://www.dol.gov/ui/data.pdf (last accessed Aug. 31, 2020).

purchased tickets directly from their favorite MLB teams. These purchases were significant and often involved thousands of dollars and required financing. *See*, *e.g.* Corrected Amended Class Action Complaint ("Complaint"), ¶¶ 9, 16, 23, 25, ECF No. 42-1. The MLB's teams (the "Defendant clubs" or the "MLB clubs") were scheduled to begin their regular season with Opening Day on March 26, 2020 and would run through the first week of October. This would include 81 games at the respective home stadium of each team. However, on March 12, 2020, Commissioner Manfred cancelled the remainder of Spring Training and postponed the beginning of the baseball season by two weeks due to COVID-19.[3] At that time, MLB failed to issue refunds for millions of ticketholders, earning the immediate swift and severe criticism of the media at large, of lawmakers, and of fans.[4] On March 16, 2020, MLB announced that the start of the regular season would be further postponed at least until mid-May 2020.[5] Again, there was no mention of refunds for ticketholders

[3] Mark Feinsand, *Opening Day delayed, Spring games canceled*, MLB News (Mar. 12, 2020), https://www.mlb.com/news/mlb-2020-season-delayed (last accessed Aug. 31, 2020).

[4] Defendants cite the decision in *Rogers v. Lyft, Inc.*, No. 20-cv-01938-VC, 2020 U.S. Dist. LEXIS 61169, at *1 (N.D. Cal. Apr. 7, 2020), claiming this case similarly seeks to opportunistically capitalize on the Covid pandemic. Defs.' Br. 11. *Lyft* was a labor law case alleging that defendant misclassified drivers as contractors, and that by refusing to pay them while they were not driving, drivers would be motivated to work during the pandemic, thereby endangering the public; Plaintiffs sought a preliminary injunction forcing Lyft to classify drivers as employees and pay them not to drive. The court viewed the allegations as farfetched. This case is different, and the argument by Defendants that they are somehow the victims for having been sued to give refunds for games is absurd. Defendants did not implement any policy for refunds until after the filing of the Complaint, a fact not lost on journalists. *See*, *e.g.*, https://www.nj.com/yankees/2020/04/is-fans-lawsuit-scaring-mlb-teams-finally-permitted-to-refund-ticket-money.html (last accessed Aug. 31, 2020).

[5] *Major League Baseball Statement*, MLB News (Mar. 16, 2020),

despite the impossibility of using the tickets they have already paid for. During this time, some Plaintiffs reached out to different Team Defendants to refund their tickets. Compl. ¶¶ 19-21, 28. In response, the Team Defendants refused to offer any refunds to Plaintiffs, citing MLB policy. *Id.* MLB teams addressed the delay of the 2020 baseball season on their respective websites. In every instance, the teams stated that the games were "postponed" rather than cancelled and that they were working with MLB to address the issue of ticket policies. *See e.g.*, Compl. ¶ 78, 78(d), (f), (g), (k), (q), (s).

At the time the Complaint was filed, MLB offered no guidance or policy regarding refunds for 2020 season ticketholders. However, even after MLB issued a so-called "policy," it was inadequate relief to the classes. First, numerous ticketholders have not received refunds at all. Second, others have been forced to accept credits for a hypothetical 2021 season that may not take place. Finally, even those getting refunds do not get interest or disgorgement on those monies. By refusing to formally cancel games, MLB is able to avoid issuing refunds to 2020 ticketholders. However, it will be virtually impossible for ticketholders to use their tickets for the 2020 season because dates for certain games have already passed, government and health officials have indicated that games should not be held or attended, and MLB has indicated that games will not be rescheduled as usual. Finally,

---

https://www.mlb.com/press-release/major-league-baseball-statement-x5426     (last accessed Aug. 31, 2020).

even if MLB does schedule some games in 2020, it is unlikely to allow ticketholders into the stadiums at all due to COVID-19.

Plaintiffs filed their complaint against Defendants on April 20, 2020 and the Amended Complaint on April 29, 2020. ECF Nos. 1, 16.  Plaintiffs later filed a Corrected Amended Complaint. ECF No. 42. On July 29, 2020, Defendants filed their motion to dismiss for lack of jurisdiction. Defendants argue that (1) the Court lacks personal jurisdiction over out-of-state Defendants; (2) Plaintiffs lack Article III standing to sue Defendants that did not sell them tickets; and (3) Plaintiffs' claims are moot. These arguments are without merit. As shown herein, the Court has general and specific jurisdiction over the Defendants. Next, Plaintiffs have Article III standing to sue all Defendants because they acted in furtherance of a conspiracy to wrongfully refuse to issue refunds to ticketholders. Finally, Plaintiffs claims are not moot because some Plaintiffs did not accept offers of refund and others did not receive interest with their refunds.

## III.   ARGUMENT

### A.   This Court Can Exercise Personal Jurisdiction Over Defendants, and Thus Plaintiffs' Claims Against Defendants Should Not Be Dismissed.[6]

When the court has not held an evidentiary hearing, in order to survive a motion to dismiss under Rule 12(b)(2), a plaintiff need only make a prima facie

---

[6] It appears that Defendants do not argue that Defendant Office of the Commissioner of Baseball should be dismissed for lack of personal jurisdiction. Defs.' Br. 18-23.

showing of personal jurisdiction over the defendant. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). A court must take the allegations in the complaint as true and resolve all disputed jurisdictional facts in the plaintiff's favor. *Am tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996).

California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with the constitutional limits of personal jurisdiction under the United States Constitution. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). Constitutional due process here requires that a defendant have certain "minimum contacts" with California, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted; internal quotation marks omitted). Such minimum contacts are demonstrated through general jurisdiction or specific jurisdiction.

### 1. The MLB club defendants located outside of California are subject to specific jurisdiction in this Court.

When reviewing whether a defendant is subject to specific jurisdiction, the court examines whether (1) the defendant has "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum;" (2) the claim "arises out of or relates to the defendant's forum-related activities;" and (3) exercising jurisdiction will be reasonable by "comport[ing] with fair play and substantial justice." *Morrill v. Scott*

*Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of satisfying the first two prongs of this test. If successful, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

> **a.** *The MLB clubs have both purposefully availed themselves of California law by having played and continuing to play into the future baseball games in California.*

A court generally will apply the purposeful availment test when the plaintiff's claim arises out of contract and will apply the purposeful direction test when the underlying claim alleges tortious conduct. *Id.* at 802. The purposeful availment test applies here, and it affirmatively demonstrates that the MLB clubs and the Office of the Commissioner of Baseball are subject to specific jurisdiction.

In arguing against the exercise of personal jurisdiction, Defendants rely on *Payne v. Office of the Comm'r of Baseball*, No. 15-cv-03229, 2016 U.S. Dist. LEXIS 47971 (N.D. Cal. Apr. 8, 2016). There, however, the *Payne* court found that "the purposeful availment prong is satisfied insofar as the Out-of-State Clubs play games in California." *Id.* at *19. It is clear that the MLB clubs located outside of California have purposefully availed themselves of California law by regularly scheduling, traveling to, and playing against clubs located in California. *Id.*

        **b.**    *Plaintiffs' claims against the MLB clubs arise directly out of their California-related activities and their transactions with Plaintiffs.*

Here, unlike in *Payne*, the second prong is satisfied and demonstrates that application of specific jurisdiction is appropriate. In *Payne*, the plaintiff raised claims of negligence (and other tort theories of liability) as to each club's use of netting to mitigate the risks attendant in a baseball game. *See id.* As the court put it, because the negligence claim "does not challenge the mere participation in the sport of baseball" as a fan, the claim could not be said to arise out of the clubs' purposeful availment of California law. *Id.* "[T]here is no specific allegation or evidence suggesting the out-of-state teams exert any significant measure of control over the conditions at [California] stadiums, the asserted claims do not appear sufficiently related to the Out-of-State Clubs' California activities." *Id.* at \*19-20.

Plaintiffs here, however, do not raise negligence claims, or any other tort claims. Their claims specifically relate to the sale of tickets for future scheduled games; to the scheduling, cancelation, and rescheduling of games; and to the failure—or rather, the refusal—to grant money refunds of ticket sales for games that have either been canceled or now will be played without fans in attendance. Unlike *Payne*, Plaintiffs here have specifically alleged that all MLB clubs—including those located outside California—develop the schedule of regular season games, and accordingly, were involved in the cancelation and rescheduling of regular season games to be played without fans in attendance. Compl., ¶ 35. Plaintiffs' claims

directly relate to and arise out of (1) canceled games that would have required the out-of-state clubs to travel to California and (2) rescheduled games that have required and will require into the future the out-of-state clubs to travel to California. For those out-of-state clubs, their travel to California to play baseball constitutes purposeful availment, and their *playing the game* directly relates to and gives rise to Plaintiffs' claims—that games were originally scheduled for which they purchased tickets, and were later canceled and rescheduled for which they cannot use their tickets, but also cannot obtain a full *monetary* refund based upon the clubs' and the MLB's conduct.

**c.** *This Court's exercise of specific jurisdiction against the MLB clubs is reasonable.*

Where the first two prongs of the specific jurisdiction analysis are demonstrated, the court next must determine whether the exercise of jurisdiction will be reasonable. *Morrill*, 873 F.3d at 1142. Following proof of the first two prongs— here, purposeful availment that gives rise to Plaintiffs' claims—the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted).

"Specific jurisdiction is presumptively reasonable if the first two requirements are satisfied." *Cont'l Auto. Sys. v. Avanci, LLC*, No. 19-CV-02520-LHK, 2019 U.S. Dist. LEXIS 214608, at *25-26 (N.D. Cal. Dec. 11, 2019). Here, there is no compelling evidence or argument that Defendants could present that the "traditional notions of fair play and substantial justice" would be offended through the application of specific jurisdiction. *See id.* at *26. In short, the application of specific jurisdiction

over the MLB clubs located outside of California is reasonable.

**B.    Plaintiffs Have Standing as to All Defendants Due to Defendants' Participation in a Conspiracy to Refuse Refunds.**

Article III standing is required in order for the suit to constitute a "case or controversy" over which a federal court has subject matter jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). In order to show Article III standing, a plaintiff must demonstrate: "(1) injury in fact; (2) causation; and (3) likelihood that a favorable decision will redress the injury." *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Furthermore, a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Defendants' argument is straightforward: Plaintiffs directly purchased tickets from only five clubs, therefore Plaintiffs lack Article III standing to sue the remaining twenty-five Defendant Clubs, the Office of the Commissioner, and Commissioner Manfred. Defs.' Br. 23. Under different facts and circumstances, this argument would have merit. However, because Plaintiffs here allege that Defendants engaged in a conspiracy, thereby resulting in Plaintiffs' and the proposed class's injuries, Defendants' argument fails. Conspiracy allegations are a limited exception to standing's general rule which requires a "direct nexus between the defendant's actions and the plaintiff's injuries." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 468 (S.D.N.Y. 2009); *see also Nat'l Football League's Sunday Ticket Antitrust*

*Litig. v. DirecTV, LLC*, 933 F.1136, 1157-58 (9th Cir. 2019) (noting that allegations of a conspiracy to limit the output of televised football games for fans was sufficient to confer standing to all plaintiffs to sue the involved defendants). If Plaintiff properly alleges a conspiracy, "then injuries suffered at the hand of any particular defendant are imputed to all other conspiracy participants, and plaintiff can overcome the otherwise absolute bar to standing." *Id.* at 468-469 (citing *Rios v. Marshall*, 100 F.R.D. 395, 404 (S.D.N.Y. 1983) ("Where a complaint properly alleges a conspiracy by several defendants, a plaintiff injured by one of the defendants as a result of the conspiracy has standing to sue the co-conspirator defendants even though the plaintiff had no direct dealings with the co-conspirators.")); *see also Presidential Life Ins. Co. v. Milken*, 946 F. Supp. 267, 280 (S.D.N.Y. 1996) ("A class representative who alleges a conspiracy by a group of defendants has standing to sue each defendant, even if it did not enter into separate transactions with each defendant."). The cases cited by Defendants are irrelevant because none of them involve or address allegations of conspiracy. Defs.' Br. 24-25 (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (noting that plaintiffs "presented no evidence that their alleged injuries were the result of a conspiracy or concerted scheme between the Trust Defendants"); and *Shahar v. Hotwire, Inc.*, No. C 12-06027 JSW, 2013 U.S. Dist. LEXIS 202256, at *10-11 (N.D. Cal. Apr. 15, 2013) (not discussing allegations of conspiracy between co-defendants)).

In California, the elements for civil conspiracy are "(1) the formation and

operation of the conspiracy and (2) damage resulting to plaintiff from (3) an act or acts done in furtherance of the common design." *Cisco Sys., Inc. v. STMicroelectronics*, No. C-14-03236-RMW, 2015 U.S. Dist. LEXIS 71958, at *9 (N.D. Cal. June 2, 2015) (internal citations omitted). To allege a conspiracy, the "plaintiff must allege, at a minimum, an agreement to commit the wrongful acts. The conspiracy may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *Id*. As Plaintiffs allege, Defendants scheduled games and subsequently canceled or rescheduled them, Compl., ¶ 35, to be played without fans in attendance, all following the purchase of tickets. Plaintiffs allege (1) that Defendants formed a conspiracy to avoid refunding monies paid by Class Members, Compl., ¶¶ 36, 96, 132; (2) that they were harmed by Defendants' actions taken pursuant to this conspiracy, *id.*, ¶¶ 10, 13, 15, 17, 22, 24, 26, 29, 31; and (3) that Defendants' actions were undertaken in furtherance of this conspiracy to avoid refunding monies paid by Class Members, *id.*, ¶¶ 96, 98, 133. Similar to the antitrust context, Defendants conspired to limit the supply of games to be played with fans in attendance, all following the purchase of tickets, without issuing full monetary refunds with interest. *See Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1157-58. Having conspired together to cancel and reschedule games, and to subsequently refuse to issue full relief to Plaintiffs and consumers, Defendants cannot now escape liability on standing grounds. Taking Plaintiffs' conspiracy allegations as true,

Plaintiffs have stated a claim for civil conspiracy involving all Defendants. Therefore, under the conspiracy exception to Article III standing, Plaintiffs have standing to bring suit against all Defendants.

### C.     Plaintiffs' Claims Are Not Moot.

Defendants assert that multiple Plaintiffs' claims should be dismissed as moot. The mootness doctrine requires that a plaintiff have a "personal stake in the outcome of the lawsuit" throughout the litigation. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (citation omitted). "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief what-ever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (finding that an offer of complete relief cannot moot a claim) (citations omitted). In short, a plaintiff's claim only becomes moot when the plaintiff "*actually receives* all of the relief he or could receive on the claim through further litigation." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) (emphasis in original). A defendant cannot offer limited relief—something less than what the plaintiff claims for damages—in an effort to "pick off" a named plaintiff from representing a class of similarly situated consumers. *Id.* at 1147 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

Plaintiffs claim that—through the purchase of tickets for MLB games, which have since been canceled or rescheduled for play without fans in attendance— Defendants have improperly deprived them of the use of their money, and have

effectively taken an interest free loan (using Plaintiffs' money) that has not yet been repaid. *E.g.*, Compl., ¶ 1. Defendants argue that because they have offered—and some Plaintiffs' have accepted—refunds or credits for future tickets, Plaintiffs' claims are now moot. Defs.' Br. 27. This is incorrect.

In particular, Defendants point to five named Plaintiffs (Plaintiffs Amanda and Jeremy Woolley, Plaintiff Berger, Plaintiff Moyer, and Plaintiff Ajzenman) who "have [been] provided full refunds or the option to receive full refunds." *Id.* An unaccepted offer, however, clearly cannot moot a plaintiff's claim—and certainly cannot moot the claims of similarly situated class members. *Gomez*, 136 S. Ct. at 669 ("[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."); *see also Chen*, 819 F.3d at 1147 (noting that where an offer would provide complete relief to an individual plaintiff's claims, but would not offer complete relief as to the plaintiff's class claims, the claims are not yet mooted until "the plaintiff has had a fair opportunity to move for class certification"). Plaintiff Ajzenman was given a credit for future ticket purchases—something he has not requested. Defs.' Br. 28 (citation omitted). Plaintiff Ajzenman's claims cannot be and are not moot.

Plaintiffs Amanda and Jeremy Woolley, Plaintiff Berger, and Plaintiff Moyer all received a "full refund" of their ticket purchases. Defs.' Br. 27 (citations omitted). However, despite purchasing their tickets well ahead of the 2020 MLB regular season—often times purchasing in 2019—and not receiving refunds until at least June 2020, these Plaintiffs *never* received interest for their purchases. Plaintiff

Jeremy Woolley, for example, purchased tickets from the Chicago Cubs in the amount of $2,159.36 on November 14, 2019. Cubs Decl., ¶ 5, ECF No. 77-4. He received a refund totaling $2,159.36 by July 10, 2020. *Id.*, ¶ 6. Plaintiff Woolley received *no interest* as part of this claimed "full refund," despite the Cubs club holding his money *interest-free* for *eight months*. Plaintiff Berger also purchased tickets from the Chicago Cubs in the amount of $2,746.24 on November 23, 2019. *Id.*, ¶ 3. She received a refund totaling $2,746.24 by July 10, 2020. *Id.*, ¶ 4. Plaintiff Berger received *no interest* as part of this claimed "full refund," despite the Cubs club holding his money *interest-free* for *eight months*. Plaintiff Moyer purchased tickets from the Philadelphia Phillies in the amount of $608.50 on February 24, 2020. Phillies Decl., ¶ 3, ECF No. 77-10. He received a refund totaling $608.50, but the transaction does not list the date it was refunded—only that it related to the game scheduled for April 19, 2020. *Id.*, ¶ 4; *id.*, Ex. A. Plaintiff Moyer received *no interest* as part of this claimed "full refund," despite the Phillies club holding his money *interest-free* for *at least two months*, if not longer.

Plaintiffs have alleged that through their ticket purchases, they lost the use of their money (and subsequently the interest that could be accrued). Compl., at 50. Courts recognize such claims as legitimate. *Van v. LLR, Inc.*, 962 F.3d 1160, 1164-65 (9th Cir. 2020) (holding that a plaintiff's claim for loss of the use of money is actual, concrete, and particularized such that it creates a valid claim for monetary relief). Plaintiffs' claims here are valid and cognizable. Defendants held Plaintiffs'

and consumers' money interest-free for months. Shortly after determining that they would cancel a portion of the baseball season, Defendants could have immediately issued refunds in an effort to limit the time that Plaintiffs and consumers were deprived of their money; but Defendants refused to do so. Not only have they waited to offer refunds, but when they issue them, they refuse to pay interest. Such an offer, when left unaccepted—as in the case of Plaintiff Ajzenman—does not moot the underlying claim. And even where a refund is accepted, where interest is not included in the offered refund, the refund cannot moot the underlying claim, because those Plaintiffs and consumers have not "actually receive[d] *all* of the relief he or could receive on the claim through further litigation." *Chen*, 819 F.3d at 1144 (emphasis added).

In reply, Defendants may further assert that some clubs have offered credits for future ticket purchases, which, for some clubs, are for more than 100% of the initial purchase, and that this amounts to interest. This likewise is an inadequate remedy to Plaintiffs' claims, and thus fails to moot their underlying claims. *Id.* Plaintiffs and consumers were deprived of their *money*. Any remedy that does not offer a monetary refund, with monetary interest, does not suffice as a valid remedy on Plaintiffs' claims. Accordingly, fans who received credits have live claims for the full amount of the tickets plus interest and disgorgement.

The COVID-19 global pandemic continues in force. There remains great uncertainty as to when the pandemic will abate, if at all, and when a potential vaccine

will be available, if one even can be developed or if one will even be effective. Accordingly, future baseball games in 2021 remain uncertain. Future games may be canceled altogether, or they may be played without fans in attendance. Thus, credits for future tickets hold speculative, uncertain value, and certainly less effective value as money, which is fungible and may be used for other purchases. Even where credits may be used for merchandise, for example, such a credit holds limited use and is likewise less holds less effective value as money, which could be used for such merchandise purchases or for other purchases elsewhere. Further, even if the 2021 baseball season will be played—and with fans in attendance—consumers may find scheduling conflicts based upon their club's future schedule that may necessitate that they *not* attend games in the future. For example, while an Atlanta Braves fan may have purchased tickets for 20 home games this season, she may have significant scheduling conflicts with the Braves' 2021 schedule, such that she cannot attend any games (if they are even held). Or, for example, a New York Mets fan who purchased tickets for games this season may suffer unforeseen circumstances that make attendance at future games impossible. Accordingly, a credit for future ticket purchases—even if they include an additional 20% value, for example—have little use to these fans, whereas the full money refund, with interest, Plaintiffs claim here on their behalf would have real value. A consumer can certainly use a full refund to simply purchase more tickets to future baseball games, should they wish to do so— at which point, the refund functions no different than the ticket credit. Or the

consumer could use the refunded money for other purchases—something the ticket (or merchandise) credit cannot do. Under any circumstance, a credit is inadequate to make Plaintiffs and consumers whole. They used money to make their purchases. With the uncertainty of baseball's future due to COVID-19, the only adequate remedy under Plaintiffs' claims is a full refund with interest. A credit, which holds limited utility, is an inadequate remedy by every measure. Thus, even where a Plaintiff has accepted such a credit—even if it was awarded with additional credits, totaling more in credit than the Plaintiff's original purchase—it is inadequate and cannot moot that Plaintiff's claims.

Moreover, pursuant to *Chen*, even if Plaintiffs had received full refunds, interest, and disgorgement of profits, they would still be able to pursue the case on behalf of the class: "[E]ven if the district court entered judgment affording [plaintiff] complete relief on his individual claims for damages and injunctive relief, mooting those claims, [plaintiff] would still be able to seek class certification under *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011.)" *Chen*, 819 F.3d at 1138. Defendants are not making refunds available to everyone even now, despite their stated policies. For example, on August 11, 2020, KGTV, a local news station located in San Diego, California, reported the experience of a Dodgers fan (not a plaintiff in this action) who did not hear anything until recently from the team, and then, was given a credit—not a refund: "Although Major League Baseball announced refund policies in April, Gallegos said they didn't hear anything until July. They received

an email from the Dodgers, offering ticketholders 'with an account credit for all 2020 tickets and parking (plus applicable fees).'" Melissa Mecija, *Confusion and legal challenges remain over MLB ticket refunds*, 10 News (Aug. 11, 2020) https://www.10news.com/news/local-news/confusion-and-legal-challenges-remain-over-mlb-ticket-refunds (last accessed Aug. 31, 2020).

## IV.   LEAVE TO AMEND

In the event Defendants' motion is granted in any respect, Plaintiffs respectfully request leave to amend, or alternatively permission to move for such leave under Rule 15(a)(2), which provides for such leave to be "freely given when justice so requires."  *See*, *e.g.*, *Sparling v. Daou* (*In re Daou Sys*.), 411 F.3d 1006, 1013 (9th Cir. 2005).

## V.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.


DATED: September 2, 2020

Respectfully submitted,

/s/ *Alex R. Straus*
Alex R. Straus (SBN 321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
Tel: (917) 471-1894
Fax: (865) 522-0049
alex@gregcolemanlaw.com

William A. Ladnier (SBN 330334)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
will@gregcolemanlaw.com

David Azar (SBN 218319)
**MILBERG PHILLIPS GROSSMAN LLP**
16755 Von Karman Avenue, Suite 200
Irvine, CA 92606
Tel: (212) 594-5300
dazar@milberg.com

Marc Grossman (admitted *pro hac vice*)
Peggy J. Wedgworth (admitted *pro hac vice*)
Andrei V. Rado (admitted *pro hac vice*)
Blake Yagman (admitted *pro hac vice*)
Michael A. Acciavatti (admitted *pro hac vice*)
**MILBERG PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Tel: (212) 594-5300
mgrossman@milberg.com
pwedgworth@milberg.com
arado@milberg.com
byagman@milberg.com
macciavatti@milberg.com

1

2

## **CERTIFICATE OF SERVICE**

3

4      The undersigned certifies that on this 2nd day of September, a copy of

5

6      PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO

7      DISMISS CLAIMS AGAINST OFFICE OF THE COMMISSIONER *ET AL.* FOR

8      LACK OF JURISDICTION was filed electronically with the Clerk of Court using the

9

10     CM/ECF system which will send notification of the filing to all counsel of record.

11

12                              /s/ *Alex R. Straus*
                                Alex R. Straus
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28